68 So.2d 366 (1953)
UNIVERSAL CONST. CO.
v.
CITY OF FORT LAUDERDALE.
Supreme Court of Florida. En Banc.
October 30, 1953.
Rehearing Denied December 11, 1953.
*367 Earnest, Lewis, Smith & Jones and Paty, Downey & Paty, West Palm Beach, for appellant.
T.O. Berryhill, Carl A. Hiaasen and McCune, Hiaasen & Kelley, Fort Lauderdale, for appellee.
HOBSON, Justice.
Counsel for appellant earnestly insist in their petition for rehearing that in this lawsuit on the quantum meruit the cause of action is not the same as the cause of action in the equity suit wherein appellant in its counterclaim sought to set off against the sum, if any, found to be due by it to the City of Fort Lauderdale, the value of the "additional improvements", as distinguished from "additional buildings" which it allegedly made in connection with the construction contract.
As we understand the former suit, which was an equitable action, it was instituted by certain citizens and taxpayers of the City of Fort Lauderdale, one of whom was also a holder of five Recreational Revenue *368 Bonds of said city, as a class suit against Universal Construction Company, the City of Fort Lauderdale, Bahai-Mar Corporation and American Surety Company of New York.
The City of Fort Lauderdale published an invitation to bidders notifying the public that on September 13, 1948, it would receive sealed bids and proposals upon a three-part package project in which the bidder was required to bid on all parts and to agree:
"(a) to purchase $2,500,000.00 of Recreational Revenue Bonds at a price to be named by bidder; and
"(b) to construct certain recreational improvements on City-owned property at a price to be named by bidder; and
"(c) to execute an operation lease to lease the premises when constructed, for a period of twenty years at an annual rental of $160,000.00"
On September 13, 1948, it was discovered that Universal Construction Company was the sole and only bidder, and the proposal of Universal Construction Company was accepted. It guaranteed:
"(a) To purchase the Recreational Revenue Bonds at 97 1/2% of par; and
"(b) To construct the improvements on the premises for $1,710,500.00; and
"(c) To execute a twenty-year lease at an annual rental of $160,000.00 per year."
On September 22, 1948, the City of Fort Lauderdale and Universal Construction Company executed the construction contract and the lease. After the bonds were validated they were sold and the cash proceeds were deposited to the account of the city.
The relief sought in the equity suit was a decree declaring the date of the beginnning of the term of the twenty-year lease and compelling Universal Construction Company to construct $212,500 worth of buildings other than those set out or specified in the original plans and specifications at no cost to the city.
In that equity action the Chancellor held, and this Court approved such holding, Universal Const. Co. v. Gore, Fla., 51 So.2d 429, that included in the contract between the Universal Construction Company and the City of Fort Lauderdale was an agreement on the part of the former to construct without charge to the latter "additional buildings" of the value of $212,500. During the course of construction, the appellant herein, in addition to performing its contractual obligation to construct the yacht basin for the sum of $1,710,500, constructed "additional improvements" the alleged value of which in labor and material was $372,000. Apparently these "additional improvements" were by the appellant and the city considered necessary to make the project complete and were approved and accepted by resolution of the city as full performance of the contractual obligation to build $212,500 worth of "additional buildings."
The Chancellor determined that the City of Fort Lauderdale and Universal Construction Company were mistaken in their understanding and agreement that the "additional improvements' constituted a tender and performance of the obligation to build "additional buildings" and entered a money judgment in the sum of $196,880 against appellant herein for failure to construct "additional buildings." It was the Chancellor's view that the action of the city fathers in passing Resolution No. 3768 of September 6, 1949, approving and accepting the "additional improvements" as being a full compliance with appellant's obligation to construct "additional buildings" was ultra vires. He concluded as a matter of law that appellant was not entitled to the reasonable value of "additional improvements" as a setoff or counterclaim against the "special fund."
It is the contention of counsel for appellant that although their client sought to recover for the value of the "improvements" in the chancery suit, proof of the reasonable value of the improvements would have been introduced not in support of an implied contract as in an action predicated upon quantum meruit but only in *369 support of its contention under its counterclaim that "additional buildings" as used in the building contract should have been construed to mean "additional improvements."
Although we entertain a sympathetic attitude toward Universal Construction Company because of the dilemma into which it apparently unwittingly but in good faith cooperated with the city in placing itself, we have not been persuaded to recede from the pronouncement contained in our former opinion that the cause of action herein is the same as that which was asserted by way of setoff or counterclaim in the equity suit, because the fundamental, underlying basic facts necessary to the maintenance of the instant suit are essentially the same as those which were relied upon in the former case.
We digress at this juncture to confess that we went a step too far in our former opinion in suggesting that the Circuit Judge might have invoked the doctrine of estoppel by judgment against appellant. This is a suit wherein the cause of action is, and the parties are, the same as in the prior case. Estoppel by judgment is applicable only in those cases wherein the parties are the same in the second suit as in the former but the cause of action is different, Gordon v. Gordon, Fla., 59 So.2d 40.
As we stated in Gordon v. Gordon, supra, it is not proper, technically speaking, to consider the doctrine of res judicata as a branch of the law of estoppel. The basic principle upon which the doctrine of res judicata rests is that there should be an end to litigation and that "in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not be pothered for the same cause by interminable litigation." 59 So.2d at page 44; italics supplied. Nevertheless, when a choice must be made we apprehend that the State, as well as the courts, is more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation.
We were previously convinced, and we retain the view, that both parties acted in good faith when they interpreted the construction contract to permit construction of "additional improvements" in lieu of "additional buildings." Moreover, to us it has never appeared fair or just that the city should be enriched at the expense of appellant.
Although we are constrained to adhere to our former opinion that all the requisites of res judicata appear to exist, we are now convinced that this doctrine should not necessarily be controlling under the facts and circumstances attendant upon this litigation. Indeed, this very Court, among others, has announced the salutary principle that the doctrine of res judicata should not be so rigidly applied as to defeat the ends of justice.
In Wallace v. Luxmoore, 156 Fla. 725, 24 So.2d 302, 304, speaking through Mr. Justice Terrell, we said:
"Stare decisis and res adjudicata are perfectly sound doctrines, approved by this court, but they are governed by well-settled principles and when factual situations arise that to apply them would defeat justice we will apply a different rule. Social and economic complexes must compel the extension of legal formulas and the approval of new precedents when shown to be necessary to administer justice. In a democracy the administration of justice is the primary concern of the State and when this cannot be done effectively by adhering to old precedents they should be modified or discarded. Blind adherence to them gets us nowhere."
See also 50 C.J.S., Judgments, § 592, and 30 Am.Jur., Judgments, Sec. 162.
We appreciate the rule that ordinarily a holding that the cause of action in a second suit between the same parties is the same as that asserted in prior litigation *370 is tantamount to a determination that all issues which were, as well as those which might have been, presented were forever foreclosed by the judgment or decree in the first case. Here, however, an unusual situation confronts us. The Chancellor in the equity suit stated that appellant did not seek a decree against the city on quantum meruit, but went on to observe that this was so "for the obvious reason that there is no basis in fact and law under the circumstances of this special fund project, its financing plan, and the limitations of the City Charter." Thus, not only was the question of appellant's right to maintain an action upon quantum meruit never before the Chancellor according to his own determination, but the comment made by him as to the reason this question was not presented could have deluded, and apparently did mislead, counsel for appellant into the belief that the Chancellor actually had only passed upon appellant's right to recover the reasonable value of the "additional improvements" from the so-called "special fund." The Chancellor's speculative observation as to why appellant had not presented his claim upon quantum meruit in the equity suit did not amount to an official adjudication of appellant's right to such an action.
It is entirely possible that the city was authorized by the general powers conferred upon it to engage a contractor to make the "additional improvements," a point which we do not decide. If, however, it were clothed with and exercised such power it would be immaterial whether it employed Universal Construction Company or some other individual or corporate contractor to make them. In such a situation the contractor might maintain an action in quantum meruit against the city even if there were an express contract unless such contract had not been fully performed on the part of the contractor or there remained something by way of consideration due the contractor other than the mere payment of money. Hazen v. Cobb-Vaughan Motor Co., 96 Fla. 151, 117 So. 853; Yates v. Ball, 132 Fla. 132, 181 So. 341; Cowan v. Orange Belt Securities Co., 142 Fla. 194, 194 So. 489.
We cannot and therefore do not now attempt to decide whether the Chancellor was correct in his conjecture as to why appellant did not present its claim upon quantum meruit. The Chancellor did not judicially decide, and this Court has not had the opportunity to determine, this vitally important question. It is our thought that simple justice demands there be an unquestionable, direct and official adjudication of such question. It does appear that injustice could result if the doctrine of res judicata be invoked for certainly the city has been, or at the end of the twenty-year lease assuredly will be, enriched by the good faith action of appellant in constructing "additional improvements" of the alleged value of $372,000. Consequently, we have concluded that in the interest of justice we should not invoke the doctrine of res judicata in the present state of the record of the former suit and this record. The question having been placed properly before this Court on rehearing, appellant must, in fairness, be allowed to present at law its claim predicated upon quantum meruit and have an unquestionable, direct and official determination in such lawsuit of the question whether it is entitled to maintain such action or is precluded therefrom, not by virtue of res judicata, but for the reason suggested by way of obiter dictum in the final decree of August 22, 1950.
The writer was the author of the original opinion in this case but has no hesitancy whatsoever in correcting, upon petition for rehearing, the error which he now is convinced was committed in applying the doctrine of res judicata. He holds, and is convinced that every member of this Court subscribes to, the view that pride of opinion should never be so great as to constitute an obstruction in the path of justice.
Reversed and remanded for further proceedings not inconsistent with this opinion.
ROBERTS, C.J., and TERRELL, THOMAS, SEBRING and MATHEWS, JJ., concur.
DREW, J., not participating.