ISOLINA PÉREZ, ETC., Plaintiff and Appellee, v.
MIGUEL BAUZÁ, Defendant and Appellant.

No. 12491.   Decided July 21, 1961.

*Eudaldo Báez García* for appellant. *José M. Saliceti* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Minor Juan Pérez, represented by his mother Isolina Pérez, brought in 1952 an action of filiation and claim for support against Miguel Bauzá. The complaint alleged that Isolina and the defendant had a love affair from 1945 to 1949, and that they lived in public concubinage in a certain property owned by the latter, situated in Barrio Buenos Aires of Lares; that as a result of those relations the plaintiff was born in December 1947; that the defendant, publicly as well as privately, caressed and played with the said minor and treated him as his son; that he contributed to his support, and that after the mother moved to the United States he entrusted the care and education of the minor to a woman by the surname of Chermety who lived in Río Piedras.

Bauzá moved for the dismissal of the complaint for want of jurisdiction on the ground that the seal of the court had

not been affixed to the copy of the complaint at the time it was served on him. On May 13, 1953, the Superior Court, San Juan Part, entered an order addressed to the attorneys for the parties to show cause why the dismissal of the action did not lie for lack of jurisdiction. The parties did not appear, and, consequently, dismissal for inactivity was entered pursuant to the provisions of Rule 11 of the Rules of Administration for the Court of First Instance.[1]

On March 28, 1956, a new action of filiation was brought before the Superior Court, Ponce Part, in which the plaintiff minor was represented by another attorney. The complaint contained substantially the same allegations which were set forth in the previous action. Against this action the defendant raised the defense of res judicata on the basis of the judgment rendered by the Superior Court, San Juan Part, and of another judgment entered by the District Court, San Juan Part, by virtue of which plaintiff was acquitted of the offense of abandonment of minors imputed to him.[2] In answer to a request for admissions under Rule 36 of 1943 (Rule 33 of 1958), the mother of the plaintiff minor stated that "she never received personally any notice that the complaint in question would be dismissed, and that she learned

---

[1] Both the order to show cause and the judgment of dismissal were notified to B. Quiñones Elías, one of the attorneys for the plaintiff, to Box 356, San Juan, Puerto Rico, despite the fact that in the summons served his address appeared to be in Aguadilla, Puerto Rico. It was also clear that the address of Mr. Vargas Hernández, another attorney for the plaintiff, was Méndez Liciaga Street, San Sebastián. Rule 4.2 of the Rules of Civil Procedure provides that it shall set forth the address of the plaintiff's attorney, if any, otherwise to the plaintiff's address. It is to this address that the clerk should direct every notice.

[2] Copy of this judgment was not presented at the trial, but the fact was sought to be established with the testimony of plaintiff's mother. This testimony is confusing on this point and the impression gathered was that the acquittal was based on the fact that judgment had not been rendered within 24 hours. (See *Silva* v. *John Doe,* 75 P.R.R. 198, 201 (1953); Annot., 37 A.L.R.2d 836 (1954); and 42 A.L.R.2d 634, 638 (1955)). We presume that the defense of res judicata depends solely on the judgment in the civil action of filiation, as pointed out in the error assigned and discussed on the brief.

of this fact only when, after taking steps with her attorneys . . . to proceed with the case and in view of their inaction in that case, she appeared before the district court where the action had been filed where, to her surprise, she was informed that it had been dismissed by her attorneys."

The trial court dismissed the defense of res judicata on the ground that the attorneys for the plaintiff in the original action filed in the San Juan Part were not served with the preliminary order, nor with the judgment of dismissal, at the address of those attorneys appearing of record.[3] Judgment was rendered sustaining the complaint.

The petition for appeal does not challenge the weighing of the evidence made by the lower court for the purpose of determining that the plaintiff minor had been in uninterrupted possession of the status of natural son of the defendant father.[4] The only error assigned refers to the dismissal of the defense of res judicata.

As stated in *Bolker* v. *Superior Court; Sosa, Int.*, 82 P.R.R. 785 (1961), the general rule is that, in the absence of a statute or rule of procedure, a judgment dismissing a complaint for lack of prosecution does not bar the plaintiff from prosecuting another action on the same cause, since in principle an adjudication on the merits is necessary in order that the defense of res judicata may prosper. *Dismissal as Res Judicata*, 54 A.L.R.2d 473, 501 (1957); *cf. Antonio Roig Sucrs.* v. *District Court*, 66 P.R.R. 424 (1946); *Reyes* v. *Reyes*, 76 P.R.R. 266, 276 (1954). Judgment of the Supreme Court of Spain of March 7, 1927

---

[3] No evidence was introduced to show that the attorneys did not actually receive the notices in question. From the original record of the case it does not appear that the envelopes containing those papers were returned to the clerk.

[4] We have examined the transcript of the evidence and, truly, the evidence offered by the plaintiff justifies fully the acknowledgment ordered and is sufficient to satisfy the most fastidious criterion. *Sanabria* v. *Heirs of González*, 82 P.R.R. 851 (1961); *Berdecía* v. *Tyrell*, 82 P.R.R. 674 (1961).

(174 *Jur. Civ.* 74, II). An identical decision was adopted prior to the effectiveness of the Rules of Civil Procedure of 1943. *Capella* v. *Carreras*, 57 P.R.R. 250 (1940). However, Rule 41 (*b*), which was substantially the same as Rule 39.2 of the Rules of 1958, which establishes a statutory modality of res judicata where judgment for inactivity has been entered, took effect on September 1, 1943. The pertinent part of that rule reads as follows:

"(*b*) *Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rules, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits.*" (Italics ours.)

Rule 41 (*b*) is consistent with the inherent power of courts to relieve the congestion of their calendars, 5 Moore, Federal Practice 1036, and likewise it is undoubtedly consistent with the laudable purpose of discouraging delinquent litigants or those who utilize the judicial channel to cause inconveniences to the adverse party by initiating untenable proceedings.

■■ In general terms, it may be affirmed that the rule of res judicata is based on considerations of public policy and necessity: on the one hand, the interest of the State in terminating litigations in order that judicial issues may not be perpetuated, as stated by Castán, 1 *Derecho Civil Español Común y Foral* 815, and on the advisability of impressing court decisions with due dignity (Judgment of the Supreme Court of Spain of July 5, 1924, 163 *Jur. Civ.* 504, III), and, on the other hand, the desirability of not submit-

ting a citizen twice to the inconveniences which the litigation of the same cause entails.[5] The doctrine is of Roman origin and was embodied in the maxim *"res judicata pro veritate habetur."* In its relationship with the common law, it was translated into the propositions *"interest reipublicae ut sit finis litium"* and *"nemo debet bis vexari pro eadem causa."* In its origin it presupposed an adversative or litigious proceeding and an adjudication on the merits. However, the complexities of the modern proceeding and the increase in litigation have resulted in its extension—by statutory channels—even to decisions which have not adjudicated the controversy on its merits. Examples of this development are Rule 41(*b*) under consideration and Rules 11.1 and 39.1(*a*) of 1958, which refer respectively to the defense of res judicata which may be interposed when in a previous action a compulsory counterclaim has not been asserted, *González* v. *Agostini*, 79 P.R.R. 481 (1956); *Sastre* v. *Cabrera*, 75 P.R.R. 1 (1953); *cf. Cruz* v. *Ortiz*, 82 P.R.R. 802 (1961), and when the same action has been abandoned more than once, *Res Judicata—Two Dismissal Rule*, 65 A.L.R.2d 642 (1959).

■■ However, the courts have refused to apply rigidly the defense of res judicata if in so doing it defeats the ends of justice, especially if reasons of public policy are involved. *In re Spinosa's Estate*, 255 P.2d 843 (Cal. 1953); *Universal Const. Co.* v. *City of Fort Lauderdale*, 68 So.2d 366 (Fla. 1953); *Commissioner of State Insurance Fund* v. *Law*, 148 N.E.2d 136 (N.Y. 1958). This is particularly true in those cases in which the previous judgment is adverse to a minor ordinarily unable to protect himself against overreaching or improper conduct of his legal representative. *In re Di Carlo,*

---

[5] *Howard T. Fisher & Assoc., Inc.* v. *Shinner Realty Co.*, 164 N.E.2d 266 (Ill. 1960); *Epstein* v. *Chatham Park, Inc.*, 153 A.2d 180, 184 (Del. 1959); *In re Richardson's Estate*, 93 N.W.2d 777 (Iowa 1958); *Smith* v. *Smith*, 299 S.W.2d 32 (Mo. 1957).

44 P.2d 562 (Cal. 1935). [6] As already stated, the doctrine rests upon the basic principle that there should be an end to litigation, but if the rigid application thereof would in practice defeat a right permeated in some way with public interest, the courts are inclined to a solution which would guarantee proper justice instead of rigidly applying a fiction of law which rests fundamentally upon a principle of convenience and procedural order. *Universal Const. Co.* v. *City of Fort Lauderdale*, 68 So.2d 366 (Fla. 1953). In other words, the rule is not absolute and should always be weighed with the equally salutary principle that justice should be done in every case. *Hodgson* v. *Applegate*, 155 A.2d. 97 (N.J. 1959).

■ There is no question that the action of filiation, which is the vehicle granted by law for determining the family status of the citizen, is clothed with a great public interest and it even has constitutional tangencies, if it is so desired, thereby affecting the individual's dignity. Article II, § 1 of the Constitution of the Commonwealth of Puerto Rico declares, precisely, that the dignity of the human being is inviolable, and defines the equality of men before the law followed by the prohibition to discriminate by reason of *birth*.

■ In the specific case under consideration in which (1) the judgment set up as res judicata did not adjudicate the merits of the cause of action exercised, and which is considered as a final adjudication only by statutory provision based upon the public convenience of the finality of judgments; (2) the action of filiation is vested with a public interest; and (3) the plaintiff is a minor sought to be held responsible for the lack of diligence of his mother in order to defeat his opportunity to wipe out the stigma of spurious child, we can not apply, in the process of weighing the two doctrines in apparent conflict, a norm which would bar the exercise of the action. This is the proper case for departing

from the rigidity of res judicata.[6]   On the other hand, and considered from the viewpoint of the inconveniences which may be caused to the defendant and which would justify his protection under the defense of res judicata, his only act in the previous action whose judgment is invoked consisted in filing a motion challenging the jurisdiction of the court based on a technical ground.   This motion was not even set for hearing.   Nor is there present the other factor regarding repeated inconveniences to a litigant.[7]

In *Calaf et al.* v. *Calaf*, 17 P.R.R. 185, 203–07 (1911), this Court sustained the defense of res judicata in an action of filiation.   This judgment was affirmed by the United States Supreme Court.   *Calaf* v. *Calaf*, 232 U.S. 371 (1914). However, the facts involved in that case were distinguishable, since the judgment invoked was entered when the Court sustained the demurrers to the complaint predicated on the lack of standing to sue, insufficiency of facts to constitute a cause of action, ambiguity, and prescription of the action of acknowledgment.   [9] We need not, therefore, elaborate on a discussion as to when we will apply, as a general rule, such defense in actions of filiation.   Each case will be decided in accordance with the surrounding circumstances.

The only error assigned by the appellant not having been committed, the judgment entered by the Superior Court, Ponce Part, on August 2, 1957, will be affirmed.

---

[6] In *Monagas* v. *Vidal*, 170 F.2d 99, 106 (1948), the Court of Appeals for the First Circuit said that this Court must be given latitude in formulating and applying its doctrine of res judicata so as to conform with our peculiar local situation.

[7] In more recent cases in which we have applied the doctrine of res judicata (*Cruz* v. *Ortiz*, 82 P.R.R. 802 (1961), and *Bolker* v. *Superior Court*, 82 P.R.R. 785 (1961)), the question involved was strictly the private relations of the parties which were not vested with any public interest and which, in view of the facts involved, did not warrant the solution we have adopted in the present case.