JOHNSON, Judge.
This is an appeal from a final decree of foreclosure of a purchase money mortgage given by the appellant to “Leroy A. Kling and Elizabeth C. Kling, husband and wife.” Leroy A. Kling is deceased and the. appel-lee, Elizabeth C. Kling, was the plaintiff in the foreclosure proceeding.
*472 The mortgage being foreclosed was given October 22, 1958, as part of the purchase price for certain lands in Walton County, Florida, which had been planted in tung groves. The mortgage provided for the first interest payment to be made on February 16, 1960, and annually thereafter on February 15. The principal was to be reduced annually by applying one-half of the net proceeds derived from the crops grown on the mortgaged property subsequent to the year 1958.
Default was made in the first interest payment, and foreclosure instituted, in which it was prayed that the entire balance of the mortgage be declared due and payable. A decree pro confesso was taken against the defendant, Gladstone and his wife for failure to appear or plead, and final judgment of foreclosure was entered, wherein the chancellor ordered the entire amount of the mortgage, with interest, costs and attorneys fee be paid or the property sold. Prior to sale, the defendant employed counsel who timely filed a motion to set aside the decree pro confesso and final decree, alleging that the defendant had been ill and that he had made every effort to retain counsel to represent him, pointing out that the defendant lived in a distant city and had to rely upon correspondence to make arrangements for counsel; also, as part of and in support of the motion to vacate, the defendant attached his answer and defenses and a counterclaim, charging fraud in the procurement of the mortgage and note as a defense thereto. The allegation of fraud was alleged to have been committed by Leroy A. Kling, who was the husband of Elizabeth C. Kling, who were the payees in said mortgage and note, as an estate by the entireties. The chancellor denied the defendant’s motion to vacate and refused to permit the filing of the answer and counterclaim. He also refused to hear any testimony concerning the fraud. The chancellor did, however, on his own motion, vacate the final decree and corrected an error in computation of the amount of interest due, and determining no default in principal, thereby limiting the foreclosure decree to the defaulted interest only, without acceleration of the principal, but specifically stated in his order that he was vacating said decree pro confesso and final decree for that sole purpose. This decree was appealed by Mr. and Mrs. Kling to this court and affirmed by this court January 10, 1961 (Kling v. Gladstone, 125 So.2d 912). This decree was apparently satisfied.
Subsequent to the foregoing proceedings, Leroy A. Kling died and his widow, appel-lee herein, became the sole owner of said note and mortgage, it having been held as an estate by the entirety. She proceeded to file foreclosure proceedings in Walton County, May 18, 1963, alleging default in the payments agreed to be made in said mortgage and note, and that there was now due and owing the full amount of said mortgage, $21,300.00, plus interest from February 15, 1960. No mention is made in said complaint of the prior suit brought by the appellee and her husband and in which only an interest payment was ordered. The defendant, appellant herein, timely filed his answer and counterclaim, in which he set up the defense of fraud because of false and fraudulent misrepresentations made by one of the original payees in the note and mortgage, to the defendant, which induced him to purchase the tung groves and give the purchase money mortgage in question. The plaintiff filed a general denial of the counterclaim, but made no further effort to strike the defenses contained in the answer nor to attack the propriety of the allegations in the counterclaim.
The defendant filed a motion to examine the plaintiff concerning certain matters contained in his answer and counterclaim. Immediately thereafter, the plaintiff filed notice of taking plaintiff’s deposition in Chicago, Illinois. To this latter, the defendant objected by motion on the ground that her testimony could be taken in Florida, within the jurisdiction of the trial court pursuant to his request to examine her. Both motions were denied and the defend *473 ant filed a request for admissions. The answer to the request for admissions consisted primarily of a lack of knowledge on the part of the plaintiff due to the fact that her deceased husband had handled the transaction.
Testimony was taken, but none offered by the plaintiff. The court recognized that it was generally conceded by the defendant that he had executed the note and mortgage and that he had not paid anything other than required by the former foreclosure suit. The defendant attempted to introduce certain letters written by the deceased husband to the defendant, which he alleged contained the fraudulent statements which induced him to purchase the property and give the mortgage in question. Objection was made at this point, by counsel for the plaintiff, that any question of fraud or misrepresentation was res judicata on the basis of the former foreclosure case, (referred to supra, Kling v. Gladstone, 125 So.2d 912) and further, that the defendant could not testify as to representations made by Mr. Kling, who was deceased, because of the provisions of the Dead Man’s Statute, F.S. 90.05, F.S.A. The court sustained the objection and refused to permit any oral or documentary evidence as to the transaction between Mr. Kling and the appellant herein, on the ground that F.S. 90.05, F.S.A. precluded the admissibility thereof. The court permitted testimony as to certain phases of the operation of the tung grove, assumed the validity of the execution of the mortgage and note, and found that the defendant was in default as to interest payments only, in the amount of $4500, and ordered the defendant to pay the same within 15 days thereafter, plus attorney’s fee and cost, or that the entire balance of principal would also be declared due and the mortgaged property sold to satisfy same.
From a reading of said final decree, it is apparent that the chancellor gave much thought and consideration to the many facets of this case before drafting his final decree; but we reach the conclusion that the chancellor took inconsistent positions with references to the question of res judicata, and an erroneous position with reference to the Dead Man’s Statute, Florida Statutes 90.05, F.S.A.
In said decree, the chancellor points out that neither the doctrine of res judicata nor estoppel by judgment, nor any of the many and varied concepts of either had been formally invoked, but that it was the court’s ruling that the contentions as to the validity of the transaction was disposed of adversely to the defendants by virtue of the decree entered by the court pursuant to the decree pro confesso formerly entered in the prior suit. The court then, however, stated in said decree:
“However, treating the issue of validity as properly presented and requiring the adjudication, * * * the court is of the view that the defendants have failed to establish by competent and convincing evidence their contention in that respect. The negotations looking to the original conveyance were solely between the deceased Leroy A. Kling and the defendant Maurice B. Gladstone, evidence of which is clearly incompetent under the Dead Man’s Statute.”
From reading the foregoing portion of the final decree it appears that while the chancellor felt that the matter was probably res judicata, he did not preclude the introduction of evidence of fraud on that ground, but did exclude such evidence on the ground that it was inadmissible under F.S. 90.05, F.S.A. The chancellor precluded the defendant from offering such evidence to establish fraud, and we think wrongfully so. The Dead Man’s Statute is not applicable here, because Elizabeth C. Kling, the party plaintiff seeking the foreclosure, was the original owner (holder of an estate by the entirety with her deceased husband, Leroy A. Kling) of the mortgage and note, and was payee of the check made as a down payment on the purchase price. In Tingle v. Hornsby (Fla.App.1959), 111 So.2d 274, 276, this court held that: “ * * * [P] ersonal property may be held in an estate by the *474 entirety. Such estates have been held to be vested in husband and wife in various forms of personalty. It is generally held that an estate by the entirety, will arise from the running of a purchase money obligation to a husband and wife, jointly, even though the wife’s interest therein arises by virtue of a gift from her spouse. * * * ” The plaintiff, Elizabeth C. Kling, is not before the court in this case as an executor, administrator, heir at law, next of kin, as-signee, legatee, devisee, or survivor of a deceased person, so as to come within the protected class mentioned in F.S. 90.05, F.S.A. The survivor of a husband or wife, as to property held as an estate by the entirety, does not fall within the affected categories set out in F.S. 90.05, F.S.A. so as to exclude testimony of an interested person in regard to transactions with a deceased person. Palm Beach Estates et al. v. Croker, 106 Fla. 617, 143 So. 792, where the court said:
“In the case of tenancies by the entire-ties, upon the death of either spouse during coverture, the survivor does not take by right of survivorship, as in the case of joint tenants, but continues to hold the whole by virtue of the original title.”
Also:
“Neither can it be said that Mrs. Croker was suing as the ‘survivor’ of Richard Croker under the contract of July 12, 1920, which was signed by both Mr. and Mrs. Croker jointly. The death of one of several joint contractors who are defendants in a suit does not bring the case within the provision to the statute which renders the other party incompetent to testify as to transactions and communications with one of the parties who is deceased.”
Therefore, the written communica-ions between Leroy A. Kling and the appellant Maurice B. Gladstone relative to the transactions leading to the purchase of the involved property and the giving of the attendant purchase money mortgage, as well as other statements made by the deceased which influenced the transaction, should have been admitted in evidence. Whether or not such evidence when heard' and admitted in evidence was sufficient to constitute fraud and therefore a defense to the foreclosure, was for the court to decide after hearing the same. Certainly it should have been proffered into, evidence for the appellate court to review, if desired, regardless of the chancellor’s ruling thereon as to its credibility and weight, or legal effect. We think the chancellor erred in not permitting the defendant to introduce this evidence.
The question of res judicata which does not appear to have been the controlling factor in the chancellor’s ruling, should, however, be discussed by this court, since there is some ambiguity as to whether such defense was properly presented when only presented by way of objection to evidence and not in the pleadings. While ordinarily, a decree pro confesso is sufficient to foreclose the question of all defenses that could have been made, the doctrine of res judicata will not be employed to work an apparent injustice. When it appears that a prima facie, at least, defense is available, and the merits have not been adjudicated as such in the prior hearing, a court of equity will not permit the doctrine of res judicata or estoppel by judgment, to be invoked without a judicial adjudication of such question, if it appears that to do so would result in art injustice. Universal Const. Co. v. Ft. Lauderdale, Fla., 68 So.2d 366-370.
Furthermore, neither the issue of res judicata nor estoppel by judgment was properly before the chancellor in this proceeding, so he was without authority to rule upon such issues in his decree. By their counterclaim appellants allege that the note and mortgage sued upon were procured by misrepresentation and fraud on the part of the mortgagees, as a con *475 ■sequence whereof rescission of the transaction was prayed for. The plaintiff-ap-pellee did not assault the counterclaim by motion for the purpose of questioning its sufficiency to state a cause of action. Instead, plaintiff answered by denying the •allegations of fraud and misrepresentation. The affirmative defenses of res judicata •or estoppel by judgment were not asserted in appellee’s answer to the counterclaim, •and appellee recorded her willingness to go ;to trial on the issue of whether the note ■and mortgage were procured by fraud and misrepresentation. By having failed to plead res judicata or estoppel by judgment •as a defense to the counterclaim, such ■defenses were waived and could not be used as a basis for the chancellor’s decree holding that such defenses were available ■and were a sufficient bar to appellant’s •charge of fraud and prayer for rescission.
In the case of Tuggle v. Maddox (Fla. 1952), 60 So.2d 158, the Supreme Court •said with respect to the necessity for pleading affirmative defenses as required by Fule 1.8(d), Florida Rules of Civil Procedure, 30 F.S.A., the following:
"Another reason for considering the motion to strike as one to dismiss or in •dismissing the cause on his own account, was the affirmative appearance that the claim was barred by the statute ■of limitations. This was a ground of the motion to strike but was not authorized as such by the rule. On the ■contrary it is specifically provided that the statute of limitations, when relied upon as a defense, shall be set forth affirmatively. Rule 9(d). This method was purposely adopted to obviate the necessity of the initial pleader’s setting forth that the statute had been waived or tolled and to dispel any existing uncertainty in the law on the subject. If the statute is affirmatively pleaded and such waiver or tolling is considered by the plaintiff to have counteracted its effect he may present the matter by a reply under rule 8(a). Of course, being an affirmative defense, the defendant may waive the statute by ignoring it.”
From the averments in the answer and counterclaim and the documentary evidence attached thereto as exhibits, it would appear that if proven by competent evidence to be true, a good defense on the ground of fraud does exist which could mitigate against the appellee. One letter states as a fact the production quantities of previous years, which is not the same as a vendor crying his wares or expressing an option. The chancellor could not tell whether this letter contained true facts or not because he precluded the defendant from offering testimony relative thereto. We think the court erred in not permitting evidence in support of the answer and counterclaim.
The defendant alleged five assignments of error in their appeal, but we think that only Assignments 2 and 4 are meritorious, which read as follows:
“2. The court erred in finding that Leroy A. Kling was the original sole mortgagee and that the plaintiff Elizabeth C. Kling, his widow, derived her rights in this suit by inheritance.”
“4. The court erred in excluding proper testimony preferred under the defendants counterclaim, said exclusion being under the theory of the Dead Man’s Statute, FSA 90.05.”
and need to be treated herein. For the reasons stated supra, we feel that both of said assignments of error are well taken.
Therefore, the decree appealed is vacated and said cause remanded with instructions to the chancellor to permit the defendant to introduce evidence as to the fraud and misrepresentations alleged, including any pertinent communications with the deceased, Leroy A. Kling.
*476 WIGGINTON, Acting C. J., concurs.
STURGIS, J., concurs specially.