In re Timothy Patrick HARTNETT, Debtor.

Timothy Patrick Hartnett, Plaintiff,

v.

Sara Mustelier and the Florida Department of Revenue, Defendants.

Bankruptcy No. 04–13613–BKC–RAM.
Adversary No. 04–1197–BKC–RAM–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 9, 2005.

Robert C. Meyer, Esq., Miami, FL, for Plaintiff.

Frederick F. Rudzik, Assistant General Counsel, Florida Dept. of Revenue, Tallahassee, FL, for Defendants.

### *MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

ROBERT A. MARK, Chief Judge.

Prior to the filing of this Chapter 7 case, a state court in Sarasota County, Florida, entered a final judgment against the Debtor for child support. The state court denied Debtor's motion to vacate the judgment as untimely, even though a DNA test established that the Debtor was not the father. The issue in this adversary is whether collateral estoppel bars the Debtor from discharging this child support debt even though he is not the biological father.

Under the unusual circumstances presented here, the Court exercises its discretion against application of collateral estoppel to avoid a harsh and illogical result. As such, viewed at the time of the bankruptcy filing, the debt was not a debt to a "child of the debtor" and the debt is dischargeable.

#### *Factual Background*

The record before this Court does not include a full presentation of the 22 year battle between the parties, but the relevant facts are not in dispute.

On November 19, 1983, the Defendant, Sara Mustelier ("Mother" or "Defendant"), gave birth to twins, Ian and Melissa Mustelier, in Sarasota County, Florida. The Plaintiff, Timothy Patrick Hartnett ("Plaintiff" or "Debtor"), is and was, at the time, a resident of Miami–Dade County, Florida, several hundred miles away.

Plaintiff was not the Mother's husband but did have an affair with the Mother, possibly a "one-night stand," although this is not a stipulated fact. Whatever the length and scope of the relationship was between the Debtor and the Defendant, the birth certificates of the children state that the Defendant's then husband was the father, not the Debtor.

Over two years after the twins were born, Defendant decided that the Debtor was the father, and on January 14, 1986, Defendant filed a paternity suit against the Debtor in Sarasota County, Florida, Case No. 1986–DI–3608–NCIV–D (the "State Court Case"). In support of the paternity suit, Defendant executed an Affidavit of Paternity swearing that the Debtor was the father.

The Debtor did not respond to the complaint, and on September 23, 1986, a Final Judgment of Paternity was entered against him by default (the "Paternity Judgment"). Thereafter, on October 6, 1987, the Sarasota state court issued an order of child support.

In September, 1991, Defendant sought to enforce the child support order. In defense, Plaintiff requested biological testing, but Defendant refused. Further orders were entered against the Plaintiff and he was subject to enforcement of the child support obligations by various court orders entered during the 1990s. Copies of these orders are attached as Exhibit "C" to the Florida Department of Revenue's Motion for Summary Judgment (CP# 76).

Finally, in the year 2000, Defendant agreed to allow a DNA test. The test results found a "0 percent" chance that Debtor was the father. Armed with proof that he was not the father, on June 1, 2001, Plaintiff filed a motion in the state court to vacate the 1986 Paternity Judgment and subsequent child support orders. Finding the motion to vacate untimely under Rule 1.540, Fla.R.Civ.P., the state court denied the motion. Thus, at the time he filed his Chapter 7 petition on April 26, 2004, the Debtor was subject to continued enforcement of child support orders, including a separate enforcement lawsuit filed in Miami–Dade County, Case No. 03–2366–CA–08 (the "Dade County Enforcement Case"). The debts consisting of past due or presently due child support arising from the Paternity Judgment and subsequent state court orders, which presently exceed $50,000, will be referred to in this Opinion as the "Child Support Debt."

### Procedural History

On May 11, 2005, shortly after filing his bankruptcy petition, the Debtor filed the complaint initiating this adversary proceeding. Count I seeks a determination that the Child Support Debt is dischargeable under § 523(a)(5), since it is not a debt to a child of the debtor. Count II seeks to enjoin the Defendant from pursuing collection activities until the dischargeability issue is resolved.

### A. The Preliminary Procedural Bouts

The procedural path towards framing the summary judgment issue has been long and bumpy. First, on June 24, 2004, Defendant filed a Motion to Dismiss Complaint and for Abstention (CP# 13). Defendant argued that the Complaint fails to state a claim because Plaintiff is collaterally estopped from contesting the child support obligation. Defendant alternatively asked the Court to abstain in favor of the state court which has concurrent jurisdiction to determine dischargeability issues under 11 U.S.C. § 523(a)(5).

The State of Florida, Department of Revenue ("DOR") appeared at a hearing on the Motion to Dismiss on June 29, 2004, and supported the Defendant's Motion. At the hearing, in addition to arguing the

issues raised in the Motion to Dismiss, both the Defendant and the DOR questioned the authenticity of the prepetition DNA test. On June 30, 2004, the Court entered an Order (CP# 18) denying the Motion to Dismiss and directing the DOR to arrange for a DNA test of the Plaintiff and both of the Defendant's children at a laboratory approved by the State of Florida. In that Order, the Court found that the judgment in the State Court Case determining that the Plaintiff was the father was not entitled to collateral estoppel effect. As such, the Court found that the Motion to Dismiss or for Abstention should be denied.

By separate Order entered on July 2, 2004, the Court granted Plaintiff's Motion for Injunction (CP# 19). That Order enjoins the Defendant and the DOR from proceeding with any action to enforce the state court child support orders until the dischargeability issue is determined.[1]

The DOR sought rehearing on both the Order Denying the Motion to Dismiss and the Order Granting Plaintiff's Motion for Injunction. The DOR also formally moved to intervene (CP# s 21 and 22). Following a hearing on August 31, 2004, the Court entered its September 17, 2004 Order Granting [the DOR's] Motion for Intervention and Denying the Motion for Rehearing (CP# 29). That Order denied rehearing without prejudice to the Defendant and DOR renewing their collateral estoppel argument after the second DNA test was concluded. The Order also granted the DOR an extension until October 18, 2004, to conduct the DNA test.

The DOR filed an interlocutory appeal from the September 17th Order Denying Rehearing, and also filed a motion for stay pending appeal. On October 14, 2004, the Court entered an Order (CP# 41) which granted a stay relieving the DOR of its obligation to conduct the DNA test pending a ruling by the United States District Court on the Motion for Leave to Appeal.

On November 4, 2004, United States District Judge Huck denied the Motion for Leave to Appeal (Judge Huck's Order is not separately docketed in this proceeding, but a copy is attached to Plaintiff's Motion to Reschedule Trial (CP# 45)). The District Court found that the DOR did not satisfy the requirements for an interlocutory appeal under 28 U.S.C. § 1292(b).

This Court's earlier Order staying the DOR's obligation to conduct a DNA test until the Motion for Leave to Appeal was decided required the DOR to conduct the test within 20 days after entry of an order denying leave to appeal. Thus, following entry of Judge Huck's order on November 4, 2004, the DOR should have arranged for the test by November 24, 2004.

Instead of conducting the test as ordered, the DOR continued its procedural attack by filing a Motion to Dismiss for Lack of Subject Matter Jurisdiction on November 18, 2004 (CP# 54) (the "New Motion to Dismiss"). In its Motion, the DOR argues that judgment for Plaintiff in this proceeding would require this Court to find that the state court wrongly decided the issue of paternity. As such, it argues that this Court lacks subject matter

---

1. 11 U.S.C. § 362(b)(2)(B) provides an exception to the automatic stay for "the collection of alimony, maintenance or support from property that is not property of the estate." However, to come within the purview of this exception, there must be a determination that the monies subject of the collection efforts constitute a debt that would be excepted from discharge as a debt in the nature of alimony, maintenance or support under 11 U.S.C. § 523(a)(5). *In re Sutton*, 250 B.R. 771, 775 (Bankr.S.D.Fla.2000).

jurisdiction under the *Rooker–Feldman* doctrine.[2]

The Court rejected this second attempt to dismiss the Complaint in its November 30, 2004 Order Denying [the DOR's] Motion to Dismiss (CP# 57). First, the Court noted that while the New Motion to Dismiss was not technically untimely since subject matter jurisdiction can be raised at any time, the DOR should have raised the *Rooker–Feldman* argument when it sought rehearing on denial of Defendant's initial Motion to Dismiss.

Second, addressing the merits of the *Rooker–Feldman* argument, the Court found that the doctrine did not defeat subject matter jurisdiction. Among other things, the Court found that application of the doctrine was not appropriate since the federal claim presented here, namely dischargeability under § 523(a)(5) of the Bankruptcy Code, could not have been presented in the State Court Case. Moreover, the DOR did not cite, and this Court did not find, any cases applying the *Rooker–Feldman* doctrine to deny subject matter jurisdiction to a bankruptcy court in a dischargeability proceeding.[3] The Court's Order Denying the Motion to Dismiss also granted the DOR a further and final extension through December 15, 2004, to conduct the DNA test.

The DOR then filed a Motion for Leave to Appeal the November 30th Order which denied the New Motion to Dismiss (CP# 59, December 9, 2004). On December 29, 2004, United States District Judge Cooke denied the Second Motion for Leave to Appeal. (A copy of Judge Cooke's decision is attached to Plaintiff's Notice of Filing (CP# 83)). The District Court specifically addressed the *Rooker–Feldman* argument and found that the doctrine was not applicable.

## B. *The Summary Judgment Motions*

Ultimately, the DOR complied with this Court's prior orders and arranged for a second DNA test. The test results were identical to the first test, reaffirming that the Debtor is not the biological father of the twins.[4]

Armed with a second conclusive test proving that he was not the father, the Debtor filed a Motion for Summary Judgment on January 11, 2005 (CP# 75). Shortly thereafter, on January 20th, the DOR filed its Motion for Summary Judgment (CP# 76). Supplemental Memoranda, responses and replies were filed by each party (CP#s 82, 84, 85 and 87), and the cross-motions were argued on March 30, 2005. A final post-hearing Supplemental Memorandum was filed by Plaintiff on April 14, 2005 (CP# 89).

The Court has reviewed the record, including portions of the State Court Case attached as exhibits to papers filed in this

---

**2.** The so-called *Rooker–Feldman* doctrine is shorthand for the jurisdictional decisions of the United States Supreme Court in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

**3.** This Court did refer to the *Rooker–Feldman* doctrine in a dischargeability adversary proceeding. *Lasky v. Itzler (In re Itzler)*, 247 B.R. 546 (Bankr.S.D.Fla.2000). That reference, however, was solely addressing the debtor's challenge to the sufficiency of service of pro-

cess in the earlier state court case. Granting relief from the state court finding that service was sufficient would have constituted improper review of the state court's decision to enter a default judgment. Simply stated, overturning a state court judgment is barred by *Rooker–Feldman*; determining the dischargeability of a judgment debt is not.

**4.** Interestingly, the DOR utilized the same laboratory which conducted the first test in 2000, even though it had challenged the authenticity of the first test.

proceeding, and considered the legal arguments presented in the summary judgment motions and supporting memoranda and at oral argument. For the reasons discussed below, the Court finds that there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law (1) declaring the Child Support Debt dischargeable in this bankruptcy case; and (2) permanently enjoining the DOR and the Defendant from engaging in further collection efforts.

## Discussion

Summary judgment is appropriate under Rule 56, Fed.R.Civ.P., applicable here by Rule 7056, Fed.R.Bankr.P., if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In this proceeding, both sides have filed summary judgment motions and the parties agree that there are no genuine issues of material fact. Only the law is in dispute.

The issue here is whether the Child Support Debt is excepted from discharge under 11 U.S.C. § 523(a)(5). In pertinent part, that section excepts from discharge any debt to a child of the debtor, for support of such child, if the debt arose from a state court order or judgment.

The basic arguments for each side are straightforward. The DOR argues that the Child Support Debt is squarely within the exception. Florida courts have determined, with finality, that the Plaintiff is the legal father and, argues the DOR, the Paternity Judgment is entitled to preclusive effect in this proceeding.

The Plaintiff strongly disagrees. How can the Child Support Debt be excepted from discharge as a debt to a "child of the debtor" when the DNA evidence has determined, with scientific certainty, that he is not the father?

Determining which side is right (more formally, which party is entitled to summary judgment) depends on the answer to the following question: Should the Paternity Judgment be given preclusive effect under the doctrine of collateral estoppel? If so, the DOR wins. Biological "fatherhood" would not matter. The State Court's final judgment of legal "fatherhood" would be binding and the debt would be deemed owed to "a child of the debtor" and excepted from discharge.

Conversely, if collateral estoppel does not apply, the Plaintiff wins. If the issue of paternity is given a fresh look in this dischargeability proceeding, the scientific evidence conclusively establishes that he is not the father. The Child Support Debt would therefore be dischargeable, since it is not a debt owed to children of the Debtor.

## Application of the Doctrine of Collateral Estoppel

 Collateral estoppel bars relitigation of issues decided in a prior judicial proceeding. *Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319 (11th Cir.1995). Collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

 The Eleventh Circuit has held that a federal court must apply state collateral estoppel law if the prior judgment was entered in a state court. *In re St. Laurent*, 991 F.2d 672, 675–76 (11th Cir.1993). Here, since the Paternity Judgment was entered by a Florida state court, this Court must apply the collateral estoppel standards applicable under Florida law.

■ Under Florida law, the following elements must be established before collateral estoppel may be invoked: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case. *St. Laurent*, 991 F.2d at 676 (citations omitted). While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its jurisdiction. *See In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987).

The first element is satisfied since the issue is identical in both cases, namely, whether the Plaintiff is the legal father of the twins. Of course, the fact that the issue is identical does not automatically mean, as the DOR argues, that the State Court Case determines the outcome here. This Court must still determine whether the state court's finding on the issue is entitled to collateral estoppel effect.

The third and fourth elements are not in dispute. The third element is met since resolving the paternity issue was critical to the Paternity Judgment. The last element is satisfied since the standard of proof in the State Court Case was at least as stringent as the preponderance of evidence standard applicable in dischargeability proceedings. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654.

The only element in question is the second element—was the issue of paternity "actually litigated" in the State Court Case?

### A. Under Florida Law, as Interpreted by this Court, a Default Judgment Generally Satisfies the Actually Litigated Element of Collateral Estoppel

■ Plaintiff argues that the Paternity Judgment should not be given preclusive effect because it was entered by default and therefore not "actually litigated." Under federal collateral estoppel law, which would apply if the prior judgment was in federal court, a pure default judgment would not support the application of collateral estoppel. *Bush*, 62 F.3d at 1323; *In re Raynor*, 922 F.2d 1146, 1150 (4th Cir. 1991); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983); *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981) ("If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court."); and *In re McMillan*, 579 F.2d 289, 292 (3d Cir.1978). Thus, if federal collateral estoppel law applied to the Paternity Judgment in this case, Plaintiff would win since under federal standards, the issue of paternity was not "actually litigated" in the State Court Case. However, as discussed earlier, since the prior judgment in this case was in a Florida state court, Florida collateral estoppel law applies. Thus, the question is whether an issue has been "actually litigated" for collateral estoppel purposes under Florida law when the issue was determined by default.

■ This Court squarely addressed this question in *Lasky v. Itzler (In re Itzler)*, 247 B.R. 546 (Bankr.S.D.Fla.2000). Although the Florida cases were not entirely clear, this Court concluded that even a pure default judgement, entered after no participation by the Defendant, satisfies the "fully litigated" element of collateral estoppel under Florida law. *Id.* at 554.

Plaintiff has not convinced the Court that *Itzler* was wrongly decided.[5] Thus, the Paternity Judgment against Plaintiff satisfies the actually litigated element of collateral estoppel. Since none of the other elements are in dispute, the Defendant has established each of the elements necessary under Florida law to apply collateral estoppel to the Paternity Judgment.

**B.** *Application of Collateral Estoppel is Still Discretionary Even if All Elements are Established*

■ The analysis does not end with a finding that Defendant has satisfied each of the collateral estoppel elements. This Court has discretion under both federal law and Florida law on whether to apply the doctrine and the facts of this case cry out for exercising that discretion here in favor of the Debtor.

Citing to Supreme Court authority, the Eleventh Circuit has specifically stated that "whether to allow issue preclusion is within the sound discretion of the trial court," *Bush*, 62 F.3d at 1325 n. 8 (citing *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (trial courts have broad discretion to determine when collateral estoppel should be applied)). The court in *Bush* went on to state that this discretion even extends to situations in which all of the elements of collateral estoppel exist:

The presence of mitigating factors in another case might cause a court to exercise discretion to *deny preclusion to* a default judgment even if the doctrine's formal elements are otherwise met.

*Id.* (emphasis added).

In short, as a matter of federal law, this Court has discretion to apply or not apply collateral estoppel to the Paternity Judgment even if each of the elements of collateral estoppel are met under Florida law. *See Weisser v. Rubin (In re Rubin)*, Nos. 98–13755–BKC–AJC, 98–1381–BKC–AJC–A, 2000 WL 387657, at *1 (Bankr.S.D.Fla. April 11, 2000) (citing *Bush* and exercising discretion to deny application of collateral estoppel to default judgment in that case).

Florida law also provides discretion in determining whether to apply collateral estoppel. The Florida Supreme Court has long recognized a manifest injustice exception under the related doctrine of res judicata. In *Universal Constr. Co. v. City of Fort Lauderdale*, 68 So.2d 366 (Fla.1953), the Florida Supreme Court considered whether res judicata should be applied to bar a quantum meruit claim. The court found that the same cause of action was involved in the prior case and that all the requisites of res judicata appeared to exist. *Id.* at 369. Nevertheless, under the facts presented, the court refused to bar the second claim holding that "the doctrine of res judicata should not be so rigidly applied as to defeat the ends of justice." *Id.*

The *Universal Construction* court noted that the doctrine of res judicata rests upon the principle that there should be an end of litigation and that the State had an interest in having every justiciable controversy settled in one action. *Id.* The court

---

**5.** The Eleventh Circuit has not ruled on this issue. In *Bush*, the Eleventh Circuit specifically stated that it was not reaching the issue of whether a Florida default judgment should be accorded preclusive effect in a bankruptcy dischargeability proceeding. 62 F.3d at 1323 n. 6. Ultimately, the question of whether default judgments satisfy the actually litigated element under Florida collateral estoppel law may be an appropriate question for the Eleventh Circuit to certify to the Florida Supreme Court. If a default judgment does *not* satisfy the actually litigated element under Florida law, that conclusion would provide an alternative basis for granting Plaintiff's Motion for Summary Judgment.

went on to explain why application of the doctrine has its limits:

Nevertheless, when a choice must be made we apprehend that the State, as well as the courts, is more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation.

*Id. See also deCancino v. Eastern Airlines, Inc.*, 283 So.2d 97 (Fla.1973) (res judicata will not be invoked where it will work an injustice).

■ More recently, the Florida Supreme Court squarely addressed whether the manifest injustice exception also applies to collateral estoppel. *State v. McBride*, 848 So.2d 287, 291 (Fla.2003). The court noted that while there were no prior Florida cases applying this exception, several federal decisions and decisions from other state courts have held that the collateral estoppel doctrine does contain a manifest injustice exception. *See e.g. Tipler v. E.I. duPont deNemours and Company, Inc.*, 443 F.2d 125, 128 (6th Cir.1971) (neither collateral estoppel nor res judicata is rigidly applied when their application would result in manifest injustice). The Florida Supreme Court agreed and specifically recognized the exception: "We hold that collateral estoppel will not be invoked to bar relief where its application would result in a manifest injustice." *Id.* at 292.

### To Prevent a Great Injustice, the Court Declines to Give Collateral Estoppel Effect to the Paternity Judgment

■ Armed with discretion under both federal and state law, the undisputed facts of this case compel the Court to deny collateral estoppel effect to the Paternity Judgment. The Court is not insensitive to state law policies regarding the finality of paternity determinations, but those policies should not be threatened or thwarted by protecting this particular Debtor from the gross injustice of emerging from bankruptcy still saddled with debts that are not to his biological children.

The Court's decision to not apply collateral estoppel is supported by the uncommon set of facts that exist in this case. First, in the state court case in which the Paternity Judgment was entered against the Debtor by default, the Debtor did not reside in the county where the case was filed, nor did the Debtor answer or otherwise appear. Second, the Debtor was not married to the mother of the children, nor did the Debtor reside in the same household as the minor children prior to or after their birth. Third, the Paternity Judgment was based solely on what proved to be a false affidavit from the mother. Finally, the DNA test performed *prior* to the bankruptcy filing conclusively proved that the Debtor was not the biological father.

A few more points should be made to keep this decision in its proper perspective. First, the state court did not apply the doctrine of collateral estoppel or res judicata in denying the Debtor's 2001 motion to vacate the Paternity Judgment. That motion was considered solely under the Florida Rule of Civil Procedure applicable to relief from judgments and under that rule, the request was untimely. In applying the procedural rule, the state court did not have the same discretion this Court has in determining whether or not to apply the doctrine of collateral estoppel. Second, this Court's decision is not a ruling overturning the Paternity Judgment. That judgment remains in place. This Court is simply determining that it should not be given preclusive effect in this dischargeability proceeding.

Finally, the Court's decision should not be read as an open invitation to deadbeat fathers to file bankruptcy in an effort to delay enforcement of state court judg-

ments or to seek, in effect, a new trial in bankruptcy court on the issue of paternity in the face of a final non-appealable judgment in the state court. Absent the unusual and compelling circumstances presented here, including, in particular, the conclusive *prepetition* DNA test, the general rule still holds: If the elements of collateral estoppel are otherwise met, bankruptcy courts considering the dischargeability of child support debts will preclude a debtor from relitigating the issue of paternity. It takes an unusual set of circumstances to justify an exception to this rule. Those unusual circumstances exist here.

### Conclusion

■ Collateral estoppel is an important doctrine in the administration of justice avoiding unnecessary court time and unjustified time and expense for the party successful in establishing its position on an identical issue in a prior proceeding. In all but rare and unusual circumstances, the doctrine should be applied if each of the elements are satisfied. Fortunately, the law provides discretion to prevent the gross injustice which would occur in this proceeding by mechanical application of collateral estoppel and this Court exercises that discretion here.

Therefore, it is—

**ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment is granted.

2. The DOR's Motion for Summary Judgment is denied.

3. The Court will enter a separate Judgment discharging the Child Support Debt and permanently enjoining the DOR and Defendant from enforcement of the debt.

### FINAL JUDGMENT

In accordance with this Court's September 9, 2005 Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment, it is—

**ORDERED AND ADJUDGED** as follows:

1. Final Judgment is entered in favor of the Plaintiff, Timothy Patrick Hartnett, and against the Defendants, Sara Musteli-er and the Florida Department of Revenue.

2. The Child Support Debt (as defined in the Memorandum Opinion) subject of this adversary proceeding is *not* within the exception to discharge in 11 U.S.C. § 523(a)(5) and therefore is discharged.

3. Pursuant to 11 U.S.C. § 524(a) the Defendants are permanently enjoined from pursuing any further collection of the Child Support Debt.

4. Costs may be taxed upon appropriate motion.