**In re: Jeffrey Michael DUPREE, Debtor.**

**Betty J. Carney, Plaintiff,**

v.

**Jeffrey Michael Dupree, Defendant.**

**Bankruptcy No. 03–25827–PMG.**
**Adversary No. 04–159.**

United States Bankruptcy Court,
M.D. Florida.
Tampa Division.

Oct. 14, 2005.

See also 336 B.R. 490, 2005 WL 3454662, 336 B.R. 498, 2005 WL 3454673, and 336 B.R. 520, 2005 WL 3454676.

W. James Butler, Butler Law Group, PA, Clearwater, FL, Patrick T. Lennon, MacFarlane Ferguson & McMullen, Tampa, FL, for Debtor.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS ADVERSARY PROCEEDING** came on for hearing on the Defendant's Motion for Summary Judgment on the four counts of the amended complaint filed by Betty J. Carney (the Plaintiff). The Plaintiff originally filed a Complaint to Determine Dischargeability of a Debt and Objection to Discharge and To Avoid Fraudulent Transfer and For Turnover against the Debtor (the Defendant), Jeffrey Michael Dupree, on March 16, 2004. Following a hearing on the Defendant's

Motion to Dismiss Complaint, an order was entered on July 13, 2004, granting in part and denying in part the motion to dismiss the complaint. The motion to dismiss the complaint was granted with respect to all of the counts except three, Counts I, VII and VIII. The amended complaint containing four counts was filed on July 20, 2004; these four counts are the subject of the Defendant's Motion for Summary Judgment. In response to the Defendant's motion, the Plaintiff filed the Plaintiff's Reply to Motion for Summary Judgment.

### Background

The Debtor filed his Chapter 7 bankruptcy petition on December 16, 2003. A NASD arbitration panel was scheduled to begin an arbitration hearing between the Plaintiff and the Debtor on December 16, 2003. In addition to the two counts (III and IV) relating to the Debtor's petition, the amended complaint contains two counts regarding the actions of the Debtor as the securities broker who sold the Plaintiff two variable annuities: Count I, that the debt owed the Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)(money obtained by false pretenses, false representation, or actual fraud), and Count II, that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4)(fraud or defalcation while acting in a fiduciary capacity).

The Plaintiff alleges in the amended complaint that the Debtor, in his capacity as a securities broker through his company, Allapree Securities, Inc., persuaded the Plaintiff to transfer her retirement savings from safe investment vehicles into two variable annuities. According to her amended complaint the Plaintiff lost a substantial portion of her retirement savings over an eighteen month period due to the Debtor's actions (approximately $210,000 or 43% of her retirement fund). The Plaintiff is the holder of an unsecured claim in the Debtor's general case in the amount of $344,201.24 plus attorneys' fees.

With regard to his original bankruptcy schedules, in Paragraph 10 of his Statement of Financial Affairs (Other transfers), the Debtor listed the following: "PROPERTY SOLD 2 Skiff Boats 4/03, Single Family Home 9/03," without any further detail. The Debtor testified at his Section 341 meeting on February 2, 2004, and at his continued Section 341 meeting on March 12, 2004 as to various matters with regard to his petition, including the transfer of the assets noted above, as well as to other assets and transfers that were not listed on his schedules.

The two counts of the amended complaint relating to the Debtor's bankruptcy estate are entitled "COUNT III False Oaths 11 U.S.C. § 727(a)(4)(A)" and "COUNT IV Withholding Property From the Estate Section § 727(a)(4)(D)." These two counts of the complaint encompass the same property, alleged as follows:

"(a) the sale of real property in North Carolina;

(b) interest in a 1984 Ford F150 and various trailers;

(c) his bank accounts which were closed within one year of the date of filing the bankruptcy petition;

(d) 1982 Boston Whaler;

(e) 1999 Express 16' aluminum boat;

(f) interests in various corporations and/or other business; and

(g) other issues expected to be found or confirmed during discovery."

On March 31, 2004, the Debtor filed an Amended Statement of Financial Affairs that had been executed by the Debtor on March 18, 2004. The Amended Statement provided greater detail in Paragraph 10 as to property transferred in the last year, including buyers' names and addresses,

prices paid for property, dates of sale, descriptions of property and relationships to the Debtor. The transfers included a residence located in Port Richey, Florida (date transferred 12/30/02), a residence located in Whittier, North Carolina (9/12/03), two boats and trailers (two sales, "approximately 4/03"), shares of a mutual fund (7/15/03—value of $1,442.00), and shares of XCEL Energy stock (9/15/03—value of $3,132.00). In addition, the Debtor amended Paragraph 11, Closed financial accounts, to disclose a Bank of America checking account in the name of Allapree Advisers, Inc. which was closed in October, 2003, with a final balance of $15.76. The Debtor also amended Paragraph 15 to list his prior address. Paragraph 18, Nature, location and name of business, was amended, adding "Home Inspections of the Suncoast, Inc." with dates of operation of "11/03 to present."

In the Debtor's general case, the U.S. Trustee filed a Motion for Extension of Time Within Which to File a Motion under 11 U.S.C. § 707(b) and a Complaint Objecting to Discharge under 11 U.S.C. § 727. An order was entering granting the U.S. Trustee's Motion to Extend Time to May 11, 2004, but the U.S. Trustee did not file a motion to dismiss this case or a complaint objecting to the Debtor's discharge. The Chapter 7 Trustee filed a Trustee's Objection to Claim of Exemption on May 11, 2004, and a Motion to Compel Debtor to Turnover Property of the Estate on May 27, 2004. On November 4, 2004, an order was entered overruling the Trustee's Objection to Debtor's Claim of Exemption as moot. On November 17, 2004 a Motion and Notice of Compromise of Controversy was filed by the Chapter 7 Trustee with regard to the Motion to Compel Turnover of Property, setting forth a settlement of this matter between the Debtor and the Chapter 7 Trustee for payment by the Debtor of the amount of $2,000. In the Trustee's Motion to Compromise Controversy, counsel for the Chapter 7 Trustee stated:

> . . . The non-exempt assets of the estate included $3,195.00 f [sic] personal property and a 1994 Lexus, 1990 Ford F250 pickup, 1998 utility trailer and a 1995 Cape Horn 27' boat. The Debtor claims that purportedly there is a lien on all the non-exempt assets . . .

> . . . The Trustee believes it is in the best interest of the estate to accept the $2,000.00 as settlement. With the costs of litigation and time spent and there is no guarantee that we would prevail in the matter . . .

On February 1, 2005, an order was entered granting the trustee's motion to compromise.

On February 2, 2005, in anticipation of Judge Baynes' retirement, the Debtor's general case and related adversary proceedings were reassigned to the Honorable Paul M. Glenn.

### Defendant's Motion for Summary Judgment

The Defendant has filed a motion for summary judgment on the four counts of the amended complaint, 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4), and §§ 727(a)(4)(A) and 727(a)(4)(D).

### Count I—11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides that an individual debtor is not discharged from a debt . . .

> (2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained, by—

> (A) false pretenses, a false representation, or actual fraud . . . .

■■■ To prevail under this section the Plaintiff must establish that (1) the Debtor knowingly or recklessly made a material misrepresentation; (2) with intent to de-

ceive the Plaintiff; and (3) the Plaintiff justifiably relied on the misrepresentation; (4) which resulted in a loss to the Plaintiff. *HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 892 (11th Cir.1996). Securities broker-dealers have been held liable for significant losses of their clients under the circumstances where fraudulent misrepresentation on the part of the broker led to the loss of money by their clients, under a theory that the brokers must only reap some benefit (i.e., a commission) from the money lost by the creditor. *See Bilzerian* at 890. In *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), the Supreme Court made it clear that once it has been established that money has been obtained by fraudulent conduct as set forth in § 523(a)(2)(A), "any debt" (which would include a loss in a brokerage account) arising therefrom is excepted from discharge.

■ Silence on the part of the Debtor with regard to a material fact can constitute a false representation under § 523(a)(2)(A). *See In re Waters*, 239 B.R. 893, 901 (Bankr.W.D.Tenn.1999) and the cases cited therein. Therefore, the Court may consider the omission of material information by the Debtor when analyzing the Debtor's conduct pursuant to § 523(a)(2)(A).

## Count II—11 U.S.C. § 523(a)(4)

■ Section 523(a)(4) of the Bankruptcy Code provides an exception to a debtor's discharge for a debt "for fraud or defalcation while acting in a fiduciary capacity..." Although in many circumstances the term "fiduciary relationship" has been considered to be a special relationship of confidence, trust, and good faith, this generalization is too broad for purposes of § 523(a)(4). The scope of this relationship pursuant to § 523(a)(4) includes only those fiduciary relationships arising from express and technical trusts, and in some cases, statutorily-created trusts. *In re Jones*, 306 B.R. 352, 355 (Bankr.N.D.Ala.2004). Also, the fiduciary obligations imposed on the relationship must have existed prior to the act that created the debt, for the debt to fall within this exception. *Id., citing Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir.1993).

■ Florida law is clear that a securities broker owes a fiduciary duty of care and loyalty to an investor. *First Union Brokerage v. Milos*, 717 F.Supp. 1519, 1526 (S.D.Fla.1989), *citing Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir.1987). However, a general fiduciary duty arising out a relationship does not create a technical trust. *In re Woods*, 284 B.R. 282, 288 (D.Colo.2001). The possible common law action for breach of fiduciary duty does not translate to an actionable breach of an express or technical trust relationship for purposes of § 523(a)(4).

## Count III—11 U.S.C. § 727(a)(4)(A)

■ Section 727(a)(4)(A) of the Bankruptcy Code provides that "The court shall grant the debtor a discharge, unless ...the debtor knowingly and fraudulently, in or in connection with the case...made a false oath or account..." The purpose of 11 U.S.C. § 727(a)(4)(A) is to insure that sufficient facts are available to all persons interested in the administration of the bankruptcy estate without requiring investigations or examinations to discover whether the information provided is true. " 'The entire thrust of an objection to discharge because of a false oath or account is to prevent knowing fraud or perjury in the bankruptcy case. As a result, the objection should not apply to minor errors...' 'A false statement or omission that has no impact on a bankruptcy case is not grounds for denial of a discharge un-

der 727(a)(4)(A).'" *In re Wills,* 243 B.R. 58, 63 (9th Cir. BAP 1999), *citing* William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 74.11 (1997) and 6 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 727.04[1][b] (15th ed. Rev.1998).

■■■ There are two elements that must be proven in order to deny the debtor a discharge under § 727(a)(4)(A): first, the debtor's oath or account must have been knowingly and fraudulently made, and second, it must be related to a material fact. *In re Ingersoll,* 124 B.R. 116, 122 (M.D.Fla.1991). Of course, the fraudulent intent in such a case may be inferred from the totality of the circumstances surrounding the debtor's case. *Id.*

■■■ There is a difference between a debtor who is trying to hide assets with a false oath or material omissions in his Statement of Financial Affairs, and a debtor who, through inadvertence, mistake, or ignorance of the issue of materiality in his disclosures, may omit certain assets in his original Statement of Financial Affairs. *See Turner v. Moeritz (In re Moeritz),* 317 B.R. 177 (Bankr.M.D.Fla.2004) and *Turner v. Hosmer (In re Hosmer),* 2004 WL 1964509 (Bankr.M.D.Fla.). In discerning whether the debtor has the requisite fraudulent intent to justify the denial of his discharge pursuant to § 727(a)(4)(A), the Court should analyze the omissions or non-disclosures as to whether they were part of a scheme on the part of the debtor to retain assets for his own benefit at the expense of his creditors.

### Count IV—11 U.S.C. § 727(a)(4)(D)

Section 727(a)(4)(D) provides that the Court shall grant the Debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case, withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs. This section is often included with other offenses under section 727, as the debtor may be refusing to turn over documents to the trustee in connection with a concealment, false oath, fraudulent transfer of assets, or other ground for discharge denial.

### The Summary Judgment Standard

In Defendant's Motion for Summary Judgment, the Defendant is seeking the determination that, with regard to the four counts of the amended complaint, there is no genuine issue as to any material fact and that the Debtor is entitled to judgment as a matter of law.

■■■ Bankruptcy Rule 7056 is applicable to this determination:

(c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The First Circuit Court of Appeals discussed the summary judgment standard in the case *Mulvihill v. Top–Flite Golf Company,* 335 F.3d 15, 19 (1st Cir.2003):

The role of summary judgment is to look behind the facade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose.... Conventional summary judgment practice requires the moving party to assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality.... Once the movant has done its part, the burden shifts to the summary judgment target to

demonstrate that a trialworthy issue exists...

In conducting this tamisage, the district court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor....This standard is notoriously liberal—but its liberality does not relieve the nonmovant of the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe...Moreover, the factual conflicts relied upon by the nonmovant must be both genuine and material...*(Citations omitted.)*

As the party moving for summary judgment, the Defendant has the burden of demonstrating that there is no genuine issue as to any material fact. If there is a genuine dispute over a material fact, summary judgment may not be granted. As a Court makes this determination, the non-moving party is to be given the benefit of the doubt on all credibility issues and the benefit of any inferences that reasonably might be inferred from the evidence. *In re Diagnostic Instrument Group, Inc.*, 283 B.R. 87, 94 (Bankr.M.D.Fla.2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, if the facts and law still do not present "sufficient disagreement" to require a trial, but rather are "so one-sided that one party must prevail as a matter of law," summary judgment must be granted. *Id.*

■■■ When faced with an opponent's motion for summary judgment, a non-moving party may not rest on its pleadings, but must bring forth specific facts in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the case of the denial of a discharge of a Chapter 7 debtor pursuant to one of the exceptions of 11 U.S.C. § 727(a), this principle would appear to be especially true. "Section 727 of the Bankruptcy Code provides that the court shall grant a discharge unless the debtor has engaged in specifically enumerated actions that warrant the denial of the discharge. 'The statute is to be construed liberally in favor of the debtor and strictly against the objector.'" *In re Leffingwell*, 279 B.R. 328, 338 (Bankr. M.D.Fla.2002), *citing Second National Bank v. Parker (In re Parker)*, 85 B.R. 384, 387 (Bankr.E.D.Va.1988). This policy is also true for an action excepting a debt from discharge pursuant to § 523(a) of the Bankruptcy Code. *See In re St. Laurent*, 991 F.2d 672, 680 (11th Cir.1993). The Court looks to the non-movant not to merely rest on the allegations of the complaint and rehash immaterial aspects of the conflict between the plaintiff and defendant in the response to the summary judgment motion, but to support the pleadings with specific facts.

### Application of the Summary Judgment Standard to this Proceeding

In this case, the Court examines the issues in light of the Plaintiff's allegations in the four counts of the amended complaint and the record for summary judgment.

### Count I

■■■ With regard to Count I, an action pursuant to 11 U.S.C. § 523(a)(2)(A), Paragraph 23 of the amended complaint alleges:

23. Plaintiff is a former client of Defendant, and was lured out of a conservative fixed annuity with American General Life Insurance Company where she invested in certificates of deposit to invest in a flexible premium IRA deferred variable annuity issued by Glenbrook Life and Annuity Company with the promise of earning steady interest in a guaran-

teed, well established, proven, safe product by Defendant.

Other paragraphs of Count I contain various general allegations of misstatement or omission of material facts by the Defendant that caused the Plaintiff to purchase two variable annuities. The Plaintiff did not file an affidavit in response to the Defendant's Motion for Summary Judgment. In support of his Motion for Summary Judgment, the Defendant filed the deposition of the Plaintiff dated December 3, 2004. In addition, the Defendant filed his affidavit containing the following statements:

3. I met with Betty J. Carney and her husband initially to discuss what she was earning on her existing investments, and to determine if there was an alternative investment which would provide more income than the decreased amounts she said she received from her existing investments.

4. I recommended that Betty Carney allocate her new investment among not less than three different funds. The funds which I recommended were not speculative or aggressive mutual funds, but instead were funds which had demonstrated solid returns and which I deemed to be stable and well managed mutual funds. The inclusion of both growth and income funds was intended to allow Mrs. Carney to withdraw the monthly amount which she sought, while having an anticipated return sufficient to permit the withdrawals to occur over an extended period of time.

5. I explained to Betty Carney that the only guaranty in the variable annuity insurance product was a guaranteed death benefit, and explained that this guaranty insured that the amount available to her husband or children would not be less than the guaranteed amount, no matter what happened to the money invested in the mutual funds.

6. I did not give any guaranty or make any statement as to what the future investment returns would be on these three funds. At the time that I recommended the mutual funds to Betty Carney, I believed that the investments were much more likely to be able to allow the monthly withdrawals Mrs. Carney desired, when compared to the yield on the previously existing investments.

8. I did not interfere with or inhibit Betty Carney's review of the application forms, prospectuses, or other documents received relating to the establishment of a customer account with Allapree Securities, Inc., or the purchase of a variable rate annuity. Further, I made no statements which contradicted the disclaimers set forth in the documents given to Betty Carney, and made no statements or promises regarding waiver of any of the disclaimers in any of the documents acknowledged by Betty Carney or delivered to her.

9. At the time that I advised Betty Carney to keep her investment in the funds which were invested in pursuant to the variable annuity, I believed that the general downturn in the stock market or related investments was a temporary retreat, and believed that the market would reverse course and regain value. The advice given to Betty Carney was consistent with the advice I gave to my other clients or customers who may have inquired regarding the change in market value of their investments.

10. All statements made to Betty Carney, with regard to the variable rate annuity, were true statements or believed to be true, and Betty Carney was advised that there was a risk associated

with any mutual fund or publicly traded security.

The Court has also reviewed the deposition of the Plaintiff to determine if there is a genuine issue of material fact in light of the affidavit of the Debtor. First, it is clear from the Plaintiff's deposition that there were only three meetings between the Plaintiff and the Debtor. At the first meeting, approximately 15 minutes in length, the Plaintiff and her husband dropped papers from "investments, CDs, tax returns..." at the Debtor's office. At the meeting the next day, the Plaintiff, who attended with her husband, signed the paperwork to transfer her existing investments into the two variable annuities. *See* Transcript of Deposition of Betty J. Carney, December 3, 2004, page 28, line 6, to page 29, line 16 (hereinafter referred to as "Transcript"). The Plaintiff was unsure about the date of the third meeting, but described it as having "...stopped in Dupree's office and I wanted to discuss my accounts, he told me to wait and see him in the fall." Transcript, page 51, lines 19–21. However, the Plaintiff had cashed in her annuities "by fall."

It appears from the amended complaint and the Plaintiff's Reply to Defendant's Motion for Summary Judgment that there are two major points of the Plaintiff with regard to her investment in the two variable annuities and the alleged misrepresentations of the Debtor in connection therewith: (1) that the Plaintiff told the Debtor several times that she wanted her money to be "safe" and that presumably the Debtor was silent as to the risk of her investment; and (2) that the Plaintiff was told by the Debtor that she could "do better" with an investment in the variable annuities sold to her by the Debtor than her investments at that time.

One of the contentions of the Plaintiff in Paragraph 23 is that the Plaintiff was "lured" out of her conservative annuity with the "promise" of a "safe product" by Debtor. In her deposition, the Plaintiff mentions in several places that she told the Debtor that she wanted her "money to be safe." Transcript, page 31, lines 11–12, and page 50, line 2. With regard to much of the conversation concerning the investment and what the Debtor told the Plaintiff and her husband, the Plaintiff mentions several times that she doesn't have a recollection:

Q In that second meeting where you and your husband spent perhaps an hour with Mr. Dupree, do you recall what kind of questions your husband asked?

A No.

Q Do you have a recollection as to how many questions he asked?

A No.

Q Did Mr. Dupree give answers to the questions that your husband asked?

A Yes.

Q While you were meeting with Mr. Dupree in that second meeting, were you shown any printed information?

A I don't recall.

Q Did you receive any brochures when you left that meeting with Mr. Dupree?

A No, I don't recall.

Transcript, page 33, lines 5 to 20.

And later in the deposition the Plaintiff was questioned by Debtor's counsel:

Q Do you recall how Mr. Dupree described investments that he had recommended to you?

A No.

Transcript, page 39, lines 5 to 7.

Upon cross-examination by her counsel, the Plaintiff testified at her deposition:

Q Did he [Debtor] discuss what the risk was of these funds?

A He didn't come out and say I would lose the principal.

Q Based on the total of your discussions that you had with Mr. Dupree prior to signing these applications, did Mr. Dupree ever indicate to you that your principal was at risk?

A No.

Transcript, page 74, lines 17 to 24.

And with regard to any risk factors indicated in and on the front of the prospectus, the Plaintiff testified:

Q Do you recall what you did with that prospectus when you received it?

A I picked it up and I leafed through the pages and I may have looked at a few lines here and there, didn't read it because I couldn't understand it.

Transcript, page 45, line 23 to page 46, line 2.

The Plaintiff also contended that that Debtor told her that he could "do better" with the variable annuities he was selling her than her original investments with First Union. *See* Transcript page 68, lines 6 to 14 and page 36, lines 8 to 19. However, to be actionable under 11 U.S.C. § 523(a)(2)(A), a representation must be one of existing fact, and not merely an expression of opinion or expectation. *See In re Schwartz & Meyers*, 130 B.R. 416, 423 (Bankr.S.D.N.Y.1991)(Judge Brozman's opinion that even if the "safe as in a bank" analogy was made, the statement would not warrant a denial of discharge under § 523(a)(2)(A)).

Many of the allegations throughout the amended complaint and Plaintiff's Reply to Defendant's Motion for Summary Judgment refer to the contention that the investment in the two variable annuities was not "suitable" or "appropriate" for the Plaintiff. However, these questions are not actionable pursuant to § 523(a)(2)(A) unless the Debtor knowingly made a mate-

rial misrepresentation. The Plaintiff does not refer to any affirmative statements that the Debtor made that were misrepresentations. With regard to the question of silence on the issue of the risk of the investment, in her deposition the Plaintiff does not recall exactly what was discussed. Therefore, it is appropriate to grant the Debtor's motion for summary judgment with respect to Count I of the amended complaint.

**Count II**

With regard to Count II, "Fraud or Defalcation While Acting in a Fiduciary Capacity," the Plaintiff has not alleged embezzlement or larceny, the other two exceptions from discharge pursuant to 11 U.S.C. § 523(a)(4). As to "fraud or defalcation while acting in a fiduciary capacity," federal courts have consistently held that an express or technical trust must exist to satisfy the fiduciary requirement of § 523(a)(4). *Freeman v. Frick (In re Frick)*, 207 B.R. 731, 734 (Bankr.N.D.Fla. 1997). In some cases, a "statutorily-created" trust would also satisfy the fiduciary requirement of § 523(a)(4). *Quaif v. Johnson*, 4 F.3d 950, 953–4 (11th Cir.1993). Although the Debtor owed fiduciary duties to his client under Florida common law, these duties do not appear to be established by an express or technical trust. Additionally, there is no allegation of a statutorily-created trust. Therefore, as a matter of law, the facts established by the pleadings in connection with Count II of the amended complaint are not sufficient to give rise to an action pursuant to 11 U.S.C. § 523(a)(4). It is appropriate to grant the Defendant's Motion for Summary Judgment with regard to Count II of the amended complaint.

**Counts III and IV**

With regard to Count III of the amended complaint, the Debtor's disclo-

sures for "Paragraph 10. Other Transfers" on his original Statement of Financial Affairs set forth only the following: "PROPERTY SOLD 2 Skiff Boats 4/03, Single Family Home 9/03." As pointed out at the Debtor's continued Section 341 meeting, this was not a proper form; the Debtor was requested to "file an appropriate form and restore that to the proper format as a proved [sic] by the court and insert the proper information." (Transcript of Meeting with Jeffrey M. Dupree, February 2, 2004 & March 12, 2004, Page 89, lines 2 to 4, (referred to herein as Transcript).) The Debtor then amended his Statement of Financial Affairs, supplementing some of his previous responses in the original Statement of Financial Affairs. In his affidavit in support of his Motion for Summary Judgment, the Debtor stated that he signed the Amended Statement of Financial Affairs on March 18, 2004 (six days following the conclusion of his Section 341 meeting) without any knowledge that the Plaintiff intended to file the adversary proceeding (Paragraph 7). This adversary proceeding was filed on March 16, 2004.

The Plaintiff's original complaint set forth the following items that he alleges the Debtor "failed to disclose and/or concealed" in his petition, schedules and Statement of Financial Affairs:

(a) the sale of real property in North Carolina;

(b) interest in a 1984 Ford F150 and various trailers;

(c) his bank accounts which were closed within one year of the date of filing the bankruptcy petition;

(d) 1982 Boston Whaler;

(e) 1999 Express 16′ aluminum boat;

(f) interests in various corporations and/or other business; and

(g) other issues expected to be found or confirmed during discovery.

With regard to the sale of real property in North Carolina, this was the "single family home 9/03" transfer noted in the original Statement of Financial Affairs that was detailed in the Amended Statement. The Debtor testified about the sale of this property at the Section 341 Meeting. (Transcript, pages 10–11, lines 24–25 and 1–11.)

The next item listed was "interest in a 1984 Ford F150 and various trailers." The Debtor testified that the Ford 150 was abandoned in Georgia, and, at the time of the Section 341 meeting, had been sitting there "Probably a year. Nine months to a year." (Transcript, page 32, line 3.) The Debtor described it as "an '84, . . . old rusted out truck that won't run." (Transcript, page 17, lines 8–9.) Attached as exhibits to the Plaintiff's Reply to the Defendant's Motion for Summary Judgment were copies of title registration information for the 1984 pick-up truck as well as various boats (two) and trailers (four) apparently registered to the Debtor. This information was obtained from the Hillsborough County Tax Collector's Office and contains the following disclaimer: "This information is provided as a courtesy of the Hillsborough County Tax Collector, which is not responsible for any errors or omissions. The official records are maintained by the Florida Department of Highway Safety and Motor Vehicles." All of registrations expired on April 26, 2004. The two boats and two of the four trailers were disclosed by the Debtor as having been sold in April, 2003. In the Amended Statement of Financial Affairs the Debtor detailed the sale of a 15′ Boston Whaler and trailer and a 16′ aluminum boat and trailer to unrelated parties as a supplement to his itemization of "2 skiff boats" in Paragraph 10 of his original Statement of Financial Affairs. In addition, the Debtor testified at his Section 341 meeting that he sold both boats with trailers. (Transcript, page 35, line 19.) In

response to the Chapter 7 Trustee's question at the Section 341 meeting, "And how many trailers do you have now?" the Debtor answered, "I have one utility trailer and one trailer that goes with the boat I currently own, the Cape Horn." (Transcript, page 35, lines 21–24.) Of the four trailer registrations attached to the Plaintiff's response, it appears that four trailers have been accounted for.

With regard to the next allegation of non-disclosure in the amended complaint, "his bank accounts which were closed within one year of the date of filing the petition," the Debtor added the information to his Amended Statement of Financial Affairs that he closed a checking account for Allapree Advisers, Inc. in October, 2003 with a final balance of $15.76. There has been no further mention of bank accounts by the Plaintiff since the filing of the amended complaint.

The amended complaint also noted that the Debtor failed to disclose "interests in various corporations and/or other businesses..." Again, in his Amended Statement of Financial Affairs the Debtor added "Home Inspections of the Suncoast, Inc." to Paragraph 18. The Plaintiff attached this corporate information for Home Inspections of the Suncoast, Inc. as an exhibit to the response to summary judgment, but there have been no other allegations of failure to disclose corporate or business interests. It is obvious from the Debtor's testimony at the Section 341 meeting that there was some confusion about whether to disclose this corporation as he believed, "...it was just the beginning of the year that [it] was incorporated." (Transcript, page 82, lines 5–7.)

The Plaintiff has not brought to the Court's attention any matter with reference to the last allegation in Counts III and IV of the amended complaint, "other issues expected to be found or confirmed during discovery."

At the close of the second session of the Section 341 meeting, on March 12, 2004, the representative from the Office of the U.S. Trustee asked whether the Debtor was going to amend his "schedules to ... reflect some of these items that we've been talking about in these meetings that have not been included?" (Transcript, page 81, lines 12–15.) The Debtor filed an amendment to his Statement of Affairs and appeared to fully disclose transfers and other information as specifically discussed at the Section 341 meeting. *See Barnett Bank of Pasco County v. Decker (In re Decker)*, 105 B.R. 79, 83 (Bankr.M.D.Fla.1989). It does not appear that the Debtor was hiding assets. In fact, the Chapter 7 Trustee hired an appraiser to inventory the Debtor's assets and then compromised the controversy with the Debtor as to his nonexempt assets for a payment of $2,000.

The Debtor has disclosed the details of the transfers that were the basis of the original complaint in both his 341 meeting and on an amended Statement of Financial Affairs. There has been no specific allegation or issue of fact brought forth by the Plaintiff with regard to Count IV (§ 727(a)(4)(D)) that the Debtor has refused to turn over any documents to the Chapter 7 Trustee. In the Transcript of the Debtor's Section 341 meeting there is a discussion of the documents requested by the Chapter 7 Trustee to be provided before the continuation of the meeting (Page 57–58); at the continuation of the Section 341 meeting the Chapter 7 Trustee states that counsel for the Debtor has "provided me with...quite a number of documents." (Page 60, lines 15–17.) Other than Count IV, as pled in the complaint, there has been no further discussion of this basis for denial of the Debtor's discharge.

## Conclusion

The Court determines that it is appropriate to grant the Defendant's Motion for Summary Judgment on all four of the counts of the amended complaint.

There does not appear to be a genuine issue of material fact with regard to any of the issues raised to except the debt from discharge under sections 523(a)(2)(A) and 523(a)(4). The Plaintiff relies solely on statements in her deposition to support the allegations made in the amended complaint. However, statements of opinion and expectation do not constitute material misrepresentations pursuant to 523(a)(2)(A). In addition, there were several instances in the deposition where the Plaintiff could not recall what was said during the meeting where she changed her retirement investment to the variable annuities sold to her by the Debtor. Also, the Plaintiff and the Debtor do not have the fiduciary relationship required for an action pursuant to § 523(a)(4).

Although some of the disclosures by the Debtor on the original Statement of Financial Affairs appear minimal, the transcript of the Debtor's testimony at the Section 341 meeting(s) and Amended Statement of Financial Affairs show the Debtor has disclosed in detail other various assets and transfers to the Chapter 7 Trustee—both assets contained in Plaintiff's complaint and assets that were not brought up at the Section 341 meetings (such as the sale of a mutual fund and stock). With regard to the assets set forth in the Plaintiff's complaint, all were disclosed in the Amended Statement of Financial Affairs or explained at the Section 341 meeting. Further, it does not appear that the Debtor has withheld any recorded information from an officer of the estate entitled to possession of such information.

Accordingly, it appears that there is no genuine issue as to any material fact, and that the Defendant's Motion for Summary Judgment should be granted as to all four counts of the amended complaint.

Therefore,

**IT IS ORDERED** that

1. The Defendant's Motion for Summary Judgment is granted.

2. A separate Final Judgment will be entered in favor of the Defendant and against the Plaintiff on the four counts of the amended complaint.