**IN RE Dayna L. BOLERA, Debtor**

**John Papa, et al., Plaintiffs**

v.

**Dayna L. Bolera Defendant**

**Case No. 11–14625**
**Adversary No. 11–1184**

United States Bankruptcy Court, S.D. Ohio, Western Division.

October 13, 2016

Reuel D. Ash, Ulmer & Berne, LLP, Cincinnati, OH, for Plaintiff.

Paul J. Minnillo, Minnillo & Jenkins Co. LPA, Cincinnati, OH, for Defendant.

## MEMORANDUM ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [Docket Number 35]

Beth A. Buchanan, United States Bankruptcy Judge

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This matter is before the court on the *Plaintiffs' Motion for Summary Judgment* [Docket Number 35] and memorandum in support [Docket Number 36]; *Defendant's Brief in Opposition to Plaintiffs' Motion for Summary Judgment* [Docket Number 39]; and the Plaintiffs' *Reply Memorandum* [Docket Number 41].

On summary judgment, Plaintiffs John Papa ("Dr. Papa") and Royal Palm Beach Medical, Inc. ("RPBM") (collectively "Plaintiffs") seek a determination that judgment debts owed to them by Debtor Dayna Bolera ("Debtor") are nondischargeable as a matter of law because of the preclusive effect to be given to a Florida state court "Fraud Order" and jury verdict creating these debts. After review of the evidence, this Court concludes that the judgment debt owed to Dr. Papa in the amount of $760,551 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The jury awarded damages against the Debtor and in favor of Dr. Papa based on Florida common law fraud, the elements of which correspond to the elements of fraud under 11 U.S.C. § 523(a)(2)(A). Having likewise met the additional requirements for issue preclusion, the findings of the Florida state court regarding Dr. Papa's claim for fraud are entitled to preclusive effect in this court. However, the jury's award of $991,854 to RPBM was not based on fraud but, instead, on claims of state law breach of fiduciary duty and violation of the Florida Deceptive Trade Practices Act. Because the elements of those claims as set forth in the operative state court complaint do not match the requirements for nondischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6), summary

judgment is denied with respect to Plaintiff RPBM.

## I. BACKGROUND

Dr. Papa and the Debtor attended chiropractic school together in the 1990's [Docket Number 35, Ex. B, ¶ 21][1]. In 2002, the Debtor and her husband, Thomas Bolera ("Mr. Bolera") (together, the "Boleras"), also a chiropractor, contacted Dr. Papa with an offer to help expand his existing Florida chiropractic business [Id., ¶ 20]. Dr. Papa, a licensed chiropractor in the state of Florida for fifteen years, built chiropractic and physical therapy practices in Florida with offices located in Royal Palm Beach and Boynton Beach [Id., ¶¶ 14–15]. Dr. Papa personally performed only chiropractic services and never performed physical therapy services. [Id., ¶ 16]. Before Dr. Papa began working with the Boleras, only licensed physical therapists employed by RPBM, a Florida corporation solely owned by Dr. Papa, performed physical therapy services in Dr. Papa's two offices [Id., ¶¶ 6, 17]. The physical therapists that RPBM employed did not perform physical therapy services for Medicare or Medicaid patients [Id., ¶ 18].

Dr. Papa and the Boleras collaborated to form PT Centers of Florida, Inc. ("PTC") in November of 2002 with the intention that PTC would be enrolled in the Medicare program and would also become credentialed by a wider array of insurance companies [Id., ¶ 22]. The parties agreed that Dr. Papa would have a 50% ownership and the Boleras would have a 50% ownership [Id., ¶ 23]. PTC was to provide all billing and accounting functions for physi-

cal therapy services, practices and clinics [Id., ¶ 9]. Profits and expenses would be shared between Dr. Papa and the Boleras in varying percentages depending upon the office location [Id., ¶¶ 24–25].

The parties also formed LAJT, Ltd. ("LAJT"), a Nevada corporation, with Dr. Papa to have a 50% ownership and the Boleras to have a 50% ownership [Id., ¶ 10]. LAJT was to purchase various physical therapy locations for which PTC would provide the billing functions [Id.]. LAJT borrowed $800,000 from Fifth Third Bank to fund purchases of various clinics [Id.]. The loan was secured by real property and other assets owned by Dr. Papa, assets of RPBM, assets of PTC, and the personal guarantees of Dr. Papa and the Boleras [Id.]. During the next six years, Dr. Papa made significant financial investments and capital contributions to PTC, LAJT and the physical therapy clinics for which PTC provided services [Id., ¶ 27].

However, the business relationship soured [Id., ¶¶ 32–36] and litigation between Dr. Papa, the Boleras, and the various business entities began in 2009 in the Circuit Court of the 15th Judicial District for Palm Beach County, Florida (the "Florida State Court"), resulting in two eventually consolidated actions in the Florida State Court (the "Florida Litigation").[2]

The Debtor filed her bankruptcy petition on July 27, 2011. Shortly thereafter, Dr. Papa and RPBM moved for relief from stay to proceed with the Florida Litigation. Dr. Papa and RPBM also filed the instant *Complaint to Determine the Non–Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6)* (the

---

1. Much of the factual and procedural background is derived from Plaintiffs' Declaration of Jared A. Levy [Docket Number 35, attached Declaration] and the exhibits attached thereto [Id., Exs. A–J] including the operative complaint in the state court litigation [Id., Ex. B].

2. The two consolidated cases are captioned *PT Centers of Florida, Inc. v. John Papa*, Case No. 2009 CA 010003 and *John Papa and Royal Palm Beach Medical, Inc. v. Thomas Bolera, Dayna Bolera, PT Centers of Florida, Inc. and LAJT, Ltd.*, Case No. 2009 CA 012909.

"§ 523 Complaint") against the Debtor. On October 24, 2011, this Court entered its *Order Granting in Part and Denying in Part Motion for Relief From Stay* (the "October 24, 2011 Order"), thereby permitting the Florida Litigation to proceed to judgment, with the issue of dischargeability under Section 523 of the Bankruptcy Code[3] being reserved to this Court. The § 523(a) action was stayed in this Court pending the outcome of the Florida Litigation.[4]

In their complaint against the Boleras in the Florida Litigation (the "Florida Complaint"), Dr. Papa and RPBM allege that:

1. Plaintiffs bring suit against Defendants for a litany of contractual and fiduciary breaches, tortious acts, civil theft, and violations of the Florida Deceptive and Unfair Trade Practices Act arising out of the parties' six-year "business" relationship, during which the Boleras provided false and inaccurate financial accountings and reconciliations that showed lower profits than those actually earned; failed to pay profits owed to Plaintiffs; stole B and continued to steal today and for the foreseeable future B Plaintiffs' income and profits; fraudulently induced Plaintiffs into taking on financial liabilities based on false statements; and attempted to bilk Dr. Papa out of his 50% ownership interests in two corporations, PTC and LAJT.

2. Based upon those failures and improprieties, Plaintiffs assert the following causes of action against Defendants: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraudulent inducement; (5) constructive trust; (6) civil theft; (7) violations of the Florida Deceptive and Unfair Trade Practices Act; and (8) an accounting. Plaintiffs seek both money damages and equitable relief.

[Docket Number 35, Ex. B, ¶¶ 1 and 2].

In granting relief from stay, this Court anticipated that there would be a trial **on the merits** regarding the claims raised in the Florida Complaint. This did not turn out to be the case. On August 6, 2012, the Florida State Court held a hearing on Dr. Papa and RPBM's *Motion for Entitlement to Attorney's Fees and Costs, and to Strike Dayna Bolera's Pleading for Fraud on the Court*. The hearing was attended in person by Plaintiffs' counsel and via telephone by the Debtor, a transcript of which is attached to the Debtor's responsive memorandum [Docket Number 39, Ex. 1, ¶ 2 and Ex. 1–A, attached transcript of the August 6, 2012 hearing ("Tr.")]. The hearing occurred after the disqualification of the Debtor's attorney (at the behest of Dr. Papa and RPBM) and concerned a motion filed by the Plaintiffs requesting attorney fees and sanctions for the Debtor's alleged improper conduct in the Florida Litigation [*Id.*]. Both Plaintiffs' counsel and the Debtor presented arguments at the hearing [*Id.*]. The Florida State Court also considered evidentiary materials submitted by the Plaintiffs although it did not consider materials from the Debtor who had not presented evidentiary materials before the hearing [*Id.*, Ex. 1, ¶ 3 and Tr., p. 21]. During the hearing, the Florida State Court denied the Plaintiffs' request for

---

**3.** Unless otherwise indicated, the terms "Bankruptcy Code," "Section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

**4.** On October 25, 2011, Dr. Papa, RPBM and Davanzo LLC filed a *Complaint Objecting to* *Discharge of the Debtor Pursuant to 11 U.S.C. § 727* against the Debtor (the "§ 727 Complaint"). This Court denied the Debtor's request to stay the § 727 Complaint, therefore that adversary proceeding has moved forward in this Court.

attorney fees [*Id.*, Tr., pp. 15–16], but concluded, by clear and convincing evidence, that the Debtor (described as "Doctor Bolera"):

> ... in the case brought against Doctor Papa, has set into motion a fraud upon The Court, which permeates the entire proceeding. That is, she brought a cause of action in the third amended complaint. That was a strategic move on her part, when she knew very well, personally knew, and her lawyer knew at the time, that Doctor Papa did not owe her any money. She said so in her deposition, and that deposition will be attached to this order. That she also set into motion, through her conduct in this case, the hiring and firing of lawyers at critical junctures when the merits of this case will be decided, causing delays, and she misrepresented to Judge Hafele her intent with respect to promoting and to giving monies back to Doctor Papa, thus defeating [opposing counsel] on behalf of Doctor Papa's motion for the appointment of a receiver. Those, all singularly and in combination, caused this Court to find that ... Doctor Bolera, has set into motion, by clear and convincing evidence, a fraud upon The Court, which has permeated this entire proceeding.

[*Id.*, Tr., pp. 21–23]. Based on these conclusions and the further determination that the Debtor filed "pleadings that are inconsistent with the truth" [*Id.*, Tr. p. 23], the Florida State Court granted the Plaintiffs' requested relief by striking the Debtor's pleadings, including her answer and third amended complaint, and entering judgment against her in favor of the Plaintiffs allowing the matter to proceed to a trial on damages only [*Id.*].

The Florida State Court's determinations were memorialized in an order, preliminarily drafted by Plaintiffs' counsel [*Id.*, Tr., pp. 21, 23–25], and entered on October 30, 2012, captioned *Order on Papa's Motion for Entitlement to Attorney Fees and Costs, and to Strike Dayna Bolera's Pleadings for Fraud on the Court* (the "Fraud Order") [Docket Number 35, Ex. C]. The Fraud Order states that: "[j]udgement on liability thus is hereby entered against Mrs. Bolera and in favor of Dr. Papa and RPBM on all of the claims asserted in Dr. Papa's and RPBM's operative Complaint against Mrs. Bolera." [*Id.*, p. 12]. The holding encompassed the Florida State Court's findings, by clear and convincing evidence, that "Mrs. Bolera has implemented a deliberate, pervasive scheme calculated to subvert the judicial process by filing a sham operative Complaint, providing false testimony under oath to the Court, and engaging in bad-faith delay tactics." [*Id.*, p. 10].

Subsequently, Debtor objected to statements and characterizations of her conduct in the Fraud Order, but her objection and request for hearing were denied [Docket Number 39, Ex.1, ¶ 5]. The Debtor further appealed the Fraud Order, but that portion of the order striking Debtor's answer and defenses and entering judgment on "liability only" was considered non-final and the appellate court declined to address the merits of that portion of the Fraud Order. [Docket Number 35, Ex. E].

A jury trial commenced to determine damages owed by the Debtor as well as the other defendants. On May 3, 2013, a jury verdict ("Jury Verdict") was rendered awarding each of the Plaintiffs damages against the Debtor on specific counts in the Florida Complaint as follows: 1) $760,551 was awarded to Dr. Papa and against the Debtor on Count III (Breach of Fiduciary Duty), Count IV (Fraudulent Inducement), and Count IX (Florida Deceptive Trade Practices Act); and (2) $991,854 was awarded to RPBM against the Debtor on Count III (Breach

of Fiduciary Duty) and Count IX (Florida Deceptive Trade Practices Act). The Jury Verdict was appealed by the Debtor and subsequently affirmed on March 19, 2015 [*Id.*, Ex. I]. A mandate was entered on April 10, 2015 finalizing the matter [*Id.*, Ex. J].

## II. SUMMARY JUDGMENT STANDARD

This Court addresses the Plaintiffs' motion for summary judgment under the standard set forth in Rule 56(a) of the Federal Rules of Civil Procedure (the "Civil Rules") made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Civil Rule 56(a) provides that summary judgment is to be granted by this Court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute exists only where "evidence is such that a reasonable [finder of fact] could return a [judgment] for the nonmoving party." *Id.*; *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

To prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986) (citations omitted). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Id.* at 587–88, 106 S.Ct. 1348; *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 511 (6th Cir. 2003). Nonetheless, mere conclusory allegations or unsupported opinions of the nonmovant are insufficient to defeat a motion for summary judgment. *Matsushita*, 475 U.S. at 586–88, 106 S.Ct. 1348; *See also Blaney v. Cengage Learning, Inc.*, 2011 U.S. Dist. LEXIS 43780, 2011 WL 1532032, at *7 (S.D. Ohio Apr. 22, 2011) ("Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions and subjective unsupported opinions asserted by the nonmoving party be adopted by the court").

## III. LEGAL ANALYSIS

 On summary judgment, the Plaintiffs seek a determination from this Court that the Fraud Order and Jury Verdict creating the judgment debts are entitled to preclusive effect in this dischargeability proceeding. The United States Supreme Court has concluded that the principle of issue preclusion applies in dischargeability proceedings when facts or legal issues determined in prior litigation are relevant to the elements to except a debt from discharge pursuant to one of the provisions of § 523. *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Clark v. Springhart (In re Springhart)*, 450 B.R. 725, 730 (Bankr. S.D. Ohio 2011). Because the Fraud Order and Jury Verdict were rendered by a Florida state court, this Court looks to Florida law to determine the extent to which these state court determinations are entitled to preclusive effect. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir.

1999) (looking to the law in the state in which the issue was litigated to determine if re-litigation of such issue is precluded); *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 123–24 (Bankr. S.D.N.Y. 2008) (looking to Florida law to determine the preclusive effect to be given to a Florida state court default judgment for fraud in a bankruptcy nondischargeability proceeding).

 Issue preclusion, also called collateral estoppel,[5] bars relitigation of an issue previously decided in a judicial proceeding if the party against whom the prior decision is asserted had a full and fair opportunity to litigate that issue in the earlier case. *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993).[6] Under Florida law, issue preclusion may be invoked where: (1) the issue was actually litigated in the prior proceeding, (2) the issue at stake is identical to the one decided in the prior litigation, (3) the prior determination of the issue was a critical and necessary part of the judgment in that earlier decision, and (4) the standard of proof in the prior action was at least as stringent as the standard of proof in the later case. *Id.* at 676 (citation omitted). In this case, the parties dispute whether the Fraud Order and Jury Verdict meet the "actually litigated" and "identity of issues" prongs required to invoke issue preclusion and this Court will begin its analysis with those.

## A. Actually Litigated

 The Debtor asserts that the Fraud Order was not "actually litigated" because it was a default judgment based not on the proffer of evidence and a trial on the merits, but, instead, was rendered as a penalty for Debtor's fraud on the court. Again, this Court looks to Florida law to determine whether a default judgment, like the Fraud Order, is "actually litigated."

 The decision to apply issue preclusion to default judgments rendered in Florida state courts often depends on the defendant's level of participation in the case. With respect to a so-called "pure" default judgment involving a defendant who does not answer or otherwise participate in the case, many but not all courts apply issue preclusion principles giving the judgment preclusive effect. *See, e.g., Howard Alternatives, Inc. v. Bentov (In re Bentov)*, 514 B.R. 907 (Bankr. S.D. Fla. 2014); *Lasky v. Itzler (In re Itzler)*, 247 B.R. 546 (Bankr. S.D. Fla. 2000) (giving issue preclusive effect to the material allegations in the complaint when a Florida court rendered a "pure" default judgment against a defendant who failed to answer or participate in the case); *Melnick v. Seifert (In re Seifert)*, 130 B.R. 607 (Bankr. M.D. Fla. 1991); *Perez v. Rodriguez*, 349 So.2d 826, 827 (Fla. Dist. Ct. App. 1977) (determining that a "default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment"); *contra Weisser v. Rubin (In re Rubin)*, 2000 Bankr. LEXIS 365, 2000 WL 387657 (Bankr. S.D. Fla.

---

**5.** Issue preclusion and collateral estoppel refer to the same doctrine. Although the term "collateral estoppel" is preferred by the Florida courts, this Court will generally refer to the doctrine using the term "issue preclusion" as preferred in this circuit. Regardless of the term used, this Court will be analyzing the elements of the doctrine under Florida state law.

**6.** The Eleventh Circuit and bankruptcy courts in Florida have carefully examined Florida preclusion law as applied in dischargeability proceedings.

Apr. 11, 2000) (denying the application of collateral estoppel to a Florida default judgment rendered after the defendant-debtor failed to appear and answer the complaint).

■ However, courts consistently apply issue preclusion to a Florida default judgment when the defendant has actively participated in the case or engaged in misconduct in the state court litigation noting that the arguments for actually litigated apply more strongly in such instances. *See, e.g. Shiver,* 396 B.R. at 125; *Allstate Ins. Co. v. Mack (In re Mack),* 2008 Bankr. LEXIS 5001, 2008 WL 4790386, at *5 (Bankr. M.D. Fla. Aug. 6, 2008) (discussing *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319, 1324–25 (11th Cir. 1995) in which the Eleventh Circuit applied the more stringent federal doctrine of collateral estoppel to a default judgment when the defendant actively participated in the case and "engaged in dilatory and deliberately obstructive conduct").

In *Shiver,* a factually similar case to the one at hand, the bankruptcy court considered the preclusionary effect to be afforded a Florida state court default judgment for fraud within a dischargeability proceeding. 396 B.R. at 113–14. In the Florida state court, the defendant-debtor, Shiver, actively participated in the early stages of the case by successfully opposing the plaintiffs' emergency request for the appointment of a receiver and filing a motion to dismiss. *Id.* at 115. However, Shiver's counsel withdrew for non-payment of fees before the motion to dismiss was decided.

*Id.* Subsequently, the motion to dismiss was denied and Shiver was ordered to file an answer. *Id.* No answer was filed and a default judgment was rendered against Shiver on liability and a jury trial was held on damages, which Shiver failed to attend. *Id.* The jury awarded damages to the plaintiffs based on Shiver's fraud in the amount of $3,013,000. *Id.*

In determining whether issue preclusion applied and, more particularly, whether the default judgment could be considered "actually litigated" the bankruptcy court cited *Itzler* and noted the instances in which Florida courts had applied issue preclusion to a pure default judgment involving no participation by the defendant. *Id.* at 124–25. The bankruptcy court compared that to Shiver's more extensive level of participation concluding that "[n]o Florida cases have been cited, and the Court is aware of none, that would decline to give preclusive effect to a default judgment in circumstances such as those presented here . . . ." *Id.* at 125.

Similar to *Shiver,* the Debtor actively participated in the Florida Litigation through the filing of pleadings, including an answer, and attendance at hearings. Although her attorney had been disqualified, the Debtor attended by telephone the August 6, 2012 hearing resulting in the Fraud Order. The transcript of the hearing reveals significant participation by the Debtor who made arguments in opposition to the Plaintiffs' allegations that she committed a fraud on the court.[7]

---

7. While the Debtor asserts that she was not allowed to present evidentiary materials at the hearing [Docket Number 39, Ex. 1], the transcript provides a more nuanced scenario. After the state court judge notes his review of Plaintiffs' evidentiary materials, the Debtor states, "Okay. But I didn't provide you the other part of that, all of those documents as well." [*Id.*, Ex. 1–A, Tr., p. 21]. To this, the state court judge responds, "But this was the time for that ..." [*Id.*]. The discourse between the state court judge and the Debtor does not support a prohibition against submitting evidence, nor is documentary evidence of such a prohibition provided in the evidentiary materials submitted to this Court by the Debtor. If anything, the transcript suggests an

The Debtor's active participation in the Florida Litigation continued after the August 6, 2012 hearing and entry of the Fraud Order. The Debtor participated in the jury trial with respect to damages, during which she was represented by counsel. The Debtor, through counsel, appealed both the Fraud Order and the Jury Verdict although neither appeal resulted in a change in the outcome of the litigation. As in *Shiver*, the Debtor's active participation in the Florida Litigation supports the application of issue preclusion to the Fraud Order and Jury Verdict.

Further solidifying the propriety of applying issue preclusion is the fact that the Fraud Order was entered as a penalty for the Debtor's misconduct in the Florida Litigation. The Florida State Court struck the Debtor's pleadings and granted judgment in favor of the Plaintiffs based on the court's conclusion that "Mrs. Bolera has implemented a deliberate, pervasive scheme calculated to subvert the judicial process by filing a sham operative Complaint, providing false testimony under oath to the Court, and engaging in numerous bad-faith delay tactics." [Docket Number 35, Ex. C, p. 10]. In situations where default judgment is granted as a penalty for misconduct or abuse of process, courts are more inclined to apply issue preclusion principles in dischargeability proceedings. *Bush*, 62 F.3d at 1325 (noting that "[j]ust as due process is not offended by the entry of default judgment against a party· for failure to cooperate with discovery . . . neither is due process offended if a debtor is held to the consequences of that judgment in a subsequent bankruptcy discharge proceeding"); *Mack*, 2008 Bankr. LEXIS 5001, 2008 WL 4790386, at *5 (determining that a default judgment based on "dilatory and deliberately obstructive conduct in the original litigation" is entitled to preclusive

opportunity to submit evidence that was

effect in a subsequent dischargeability proceeding).

Based on the above, this Court concludes that the Fraud Order and Jury Verdict meet the "actually litigated" requirement for the application of issue preclusion.

### B. Identity of Issues

For issue preclusion to apply, the factual and legal issues decided in the Florida Litigation must be identical to those at stake in this dischargeability proceeding. *St. Laurent*, 991 F.2d at 676. The Plaintiffs argue that issue preclusion should apply to hold the judgment debts nondischargeable pursuant to §§ 523(a)(2), (a)(4), and (a)(6). Because these nondischargeability claims have different requirements, the court will consider each separately.

### 1. Fraud: Bankruptcy Code Section 523(a)(2)(A)

 The Plaintiffs assert that their fraud claim in the Florida Litigation is substantially similar to the requirements for nondischargeability of debt for· fraud pursuant to § 523(a)(2)(A). This bankruptcy code provision excepts from discharge a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

1 U.S.C. § 523(a)(2)(A). For fraud in the form of a false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money through a material misrepresentation that, at the time, the

missed.

debtor knew was false or made with gross recklessness as to its truth, (2) the debtor intended to deceive the creditor, (3) the creditor justifiably relied on the false representation and (4) its reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir. 1998).

■ The court compares these requirements to the elements of a common law fraud claim. "To prove fraud under Florida law, a plaintiff must establish that the defendant made a 'deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff.' " *St. Laurent*, 991 F.2d at 676 (further citation omitted). The Eleventh Circuit, as well as other federal courts, have concluded that the elements of fraud under Florida state law "closely mirror" the requirements of § 523(a)(2)(A) and are " 'sufficiently identical … to meet the [identity of issues] prong of the test for collateral estoppel.' " *Id.* (further citation omitted). *See also Shiver*, 396 B.R. at 128 (noting that "[f]ederal courts applying Florida law have concluded that the elements under § 523(a)(2)(A) and Florida common law fraud claims are identical").

■ The Debtor contends, however, that the issues are not sufficiently identical because the Fraud Order did not establish fraud in the inducement or incurrence of the debt owed to the Plaintiffs. Instead, the Debtor asserts that the Fraud Order establishes a fraud on the court committed by the Debtor during the course of litigation, a fraud that does not meet the elements of § 523(a)(2)(A).

■ The Debtor's analysis of the Fraud Order is only partially correct—it is not so much the Florida State Court's finding of fraud on the court that creates a § 523(a)(2)(A) issue but rather the consequence of the order itself. While the Debtor's actions during the Florida Litigation did indeed result in the Fraud Order, the Fraud Order's effect was to conclusively establish the Debtor's liability on the claims set forth in the Florida Complaint [Docket Number 35, Ex. C, p. 12 ("Judgement on liability thus is hereby entered against Mrs. Bolera and in favor of Dr. Papa and RPBM on all of the claims asserted in Dr. Papa's and RPBM's operative Complaint against Mrs. Bolera.") ]. The claims in the Florida Complaint include Count IV (Fraudulent Inducement) which states:

137. Based upon the trust and confidence reposed in the Boleras by Dr. Papa, the Boleras induced Plaintiffs to mortgage two office buildings to Firth Third as collateral on LAJT's $800,000 loan with the bank, and to take on other financial liabilities (including pledging corporate assets and personally guaranteeing the loan), by representing that Dr. Papa was an officer and 50% owner and shareholder of LAJT, that Dr. Papa was a 50% owner and shareholder of PTC, and that the Boleras would distribute 50% of all profits generated by the Fort Lauderdale, Plantation, Lake Worth, West Palm Beach, Greenacres, and Boca Raton physical therapy clinics, and 33.33% of all profits generated by the Belle Glade and the 441 clinics, to Plaintiffs.

138. At the time, the Boleras knew that Dr. Papa was not an officer of LAJT, intended to defraud Dr. Papa out of his 50% ownership and shareholder interests in LAJT and PTC, and did not intend to pay Plaintiffs any profits generated by the various PT clinics.

139. The misrepresentations set forth in paragraph 137 were material.

140. At the time the Boleras made those material misrepresentations, the Boleras intended to induce Plaintiffs to rely on them and personally guarantee, pledge

corporate assets, and mortgage his office buildings to Fifth Third as collateral for LAJT's $800,000 loan, and to take on additional financial liabilities.

141. Plaintiffs, in fact, relied upon the Boleras' misrepresentations and personally guaranteed, pledged corporate assets, and mortgaged office buildings to Fifth Third as collateral for LAJT's $800,000 loan, and took on additional financial liabilities.

142. Plaintiffs thus have suffered damages in justifiable reliance on the material misrepresentations by the Boleras.

[Docket Number 35, Ex. B, ¶¶ 137–142]. It is these factual and legal allegations in the Florida Complaint, conclusively established through the Fraud Order, that closely mirror the requirements of § 523(a)(2)(A). *See Bentov,* 514 B.R. at 914; *Itzler,* 247 B.R. at 551 ("The law is clear that a default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment.").[8]

However, the court's analysis does not end there because the Fraud Order left undetermined one critical element: the quantification of damages suffered by the Plaintiffs caused by the Debtor's fraud. A jury trial was held in the Florida Litiga-

tion to quantify damages, and, on May 3, 2013, the jury rendered its Jury Verdict determining that the Debtor owed each of the Plaintiffs differing amounts of money based on specific claims in the Florida Complaint [Docket Number 35, Ex. H]. Damages were awarded to Dr. Papa and against the Debtor in the amount of $760,551 based on Count III (Breach of Fiduciary Duty), Count IV (Fraudulent Inducement), and Count IX (Florida Deceptive Trade Practices Act) [*Id.*]. However, the basis for the jury's award of $991,854 to RPBM was limited to Count III (Breach of Fiduciary Duty) and Count IX (Florida Deceptive Trade Practices Act) [*Id.*]. To put it simply, no portion of the Debtor's debt to RPBM was attributed to fraud.

In their summary judgment motion, both Dr. Papa and RPBM rely on Count IV (Fraudulent Inducement) of the Florida Complaint to establish an "identity of issues" with the elements to except a debt from discharge pursuant to § 523(a)(2)(A). Because the jury attributed no damages to RPBM based on Count IV, issue preclusion cannot be applied to except its $991,854 damages award from discharge under this Bankruptcy Code provision. However, the jury cited Count IV as a basis for Dr. Papa's damages award in the Jury Verdict. As already noted, the allegations in Count IV closely mirror the requirements of § 523(a)(2)(A) meeting the "identity of issues" prong for the applica-

---

**8.** The Debtor contends that summary judgment is inappropriate where a debtor's intent is at issue citing the Sixth Circuit's *Hoover* decision among other cases. *Hoover v. Radabaugh,* 307 F.3d 460, 467 (6th Cir. 2002). While it is generally inappropriate for a judge to determine intent on summary judgment, intent can be preclusively established through the application of issue preclusion to a prior judgment. *See, e.g., Livingston v. Transnation Title Insurance Co. (In re Livingston),* 2010 U.S. App LEXIS 7313, 2010 WL 1404530, 372 Fed.Appx. 613, 618 (6th Cir. April 9, 2010)

(affirming a bankruptcy court's determination on summary judgment in a § 523(a)(2)(A) action that a Michigan judgment collaterally estopped the debtor from relitigating the elements of fraud); *St. Laurent,* 991 F.2d at 676–77 (determining that a Florida fraud judgment preclusively established all elements for nondischargeability pursuant to § 523(a)(2)(A), including intent to deceive). Otherwise, carving out an exception for "intent" from the doctrine of issue preclusion would render the doctrine meaningless.

tion of issue preclusion to Dr. Papa's $760,551 damages award.

## 2. Fraud or Defalcation in a Fiduciary Capacity: Bankruptcy Code Section 523(a)(4)

■ Alternatively, the Plaintiffs argue that RPBM's $991,854 damages award was attributed to the Debtor's breach of fiduciary duty meeting the elements for the debt to be excepted from discharge pursuant to § 523(a)(4). This provision excepts from discharge debts for "fraud or defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4).

■ Significantly, the Sixth Circuit has considered the nature of the "fiduciary capacity" requirement found in the fraud/defalcation provision of § 523(a)(4) and construes the term narrowly. *See Board of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007); *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005). To satisfy the fiduciary capacity requirement, the debtor must hold funds in a trust for a third party. *Blaszak*, 397 F.3d at 391. The fiduciary relationship must turn on the existence of a pre-existing express or technical trust whose res encompasses the property at issue. *Id.* The provision does not extend to constructive or implied trusts imposed as an equitable remedy. *Id.*; *Bucci*, 493 F.3d at 639–40. The trust requirement has been similarly imposed by courts in the Eleventh Circuit. *See McDowell v. Stein*, 415 B.R. 584, 594 (S.D. Fla. 2009) ("Federal law narrowly defines the concept of 'fiduciary relationship' under § 523(a)(4) to include only relationships involving an express or technical trust."); *Galaz v. Monson (In re Monson)*, 2013 Bankr. LEXIS 3089, 2013 WL 3944144, at *1 (Bankr. M.D. Fla. July 31, 2013) ("For a debt to be nondischarge-able under § 523(a)(4) for 'fraud or defalcation while acting in a fiduciary capacity,' a plaintiff must show that the debtor violated a fiduciary duty under an express or technical trust.").

Turning to the facts, the Debtor was found liable, via the Fraud Order, for a breach of fiduciary duty owed to the Plaintiffs under Florida law [Docket Number 35, Ex. B, Count III]. While this cause of action requires the existence of a fiduciary duty, breach of that duty, and damages proximately caused by the breach, it does not require the existence of an express or technical trust. *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). Consequently, a simple breach of fiduciary duty under state law is insufficient to establish nondischargeability under § 523(a)(4). *Perry v. Ichida (In re Ichida)*, 434 B.R. 852, 859 (Bankr. S.D. Ohio 2010) (because of the controlling Sixth Circuit authority limiting the scope of this provision to fiduciary relationships arising from the presence of an express or technical trust, "[c]laims based solely on a 'fail[ure] to meet an obligation under a common law fiduciary relationship' will not give rise to a nondischargeability judgment under § 523(a)(4)"); *see also Carney v. Dupree (In re Dupree)*, 336 B.R. 506, 517 (Bankr. M.D. Fla. 2005) (holding that the requirements of § 523(a)(4) are not met solely by a breach of fiduciary duty under Florida common law). Furthermore, the Plaintiffs cite no facts in the Florida Complaint demonstrating the elements needed to establish an express or technical trust. *See Ichida*, 434 B.R. at 861 (proving a technical or express trust requires: (1) an intent to create a trust, (2) a trustee, (3) a trust res and (4) a definite beneficiary).

Because the Debtor's liability for breach of fiduciary duty under state law is insufficient to establish nondischargeability pursuant to § 523(a)(4), issue preclusion is not

applicable to except RPBM's judgment debt from discharge under this provision of the Bankruptcy Code.

### 3. Willful and Malicious Injury: Bankruptcy Code Section 523(a)(6)

■ Next, Plaintiffs seek a determination that issue preclusion applies to except RPBM's debt from discharge pursuant to § 523(a)(6). This statutory provision excepts from discharge any debt for a "willful and malicious injury by the debtor to another entity or the property of another entity[.]" 11 U.S.C. § 523(a)(6). Although often found concurrently, the terms "willful" and "malicious" are distinct requirement and both must be met for a debt to be nondischargeable. *Yeager v. Wilmers*, 553 B.R. 102, 107 (S.D. Ohio 2015).

■ With respect to the willful requirement, the Supreme Court determined that a debtor's acts must not only be intentional but also be committed with the intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–63, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Sixth Circuit further clarified the standard by holding that the debtor must be found to have desired to cause the harm or had knowledge that the harm was substantially certain to result from the debtor's actions. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). *See also Yeager*, 553 B.R. at 107.

■ In addition, a plaintiff must demonstrate that the injury was "mali-cious," meaning that it arose out of a conscious disregard of one's duties or without just cause or excuse. *Yeager*, 553 B.R. at 107. It does not require ill-will or specific intent. *Id.*

■ In their motion for summary judgment, the Plaintiffs create a summary of facts from the entirety of the Florida Complaint and a portion of their § 523 Complaint to meet the requirements of § 523(a)(6) [Docket Number 36, p. 13]. However, the Plaintiffs fail to specify where each fact in the summary originated, which is important because the Jury Verdict granted damages to Plaintiff RPBM based on only a limited number of counts in the Florida Complaint: Count III (Breach of Fiduciary Duty) and Count IX (Florida Deceptive Trade Practices Act). The Plaintiffs do not explain which facts necessary to a judgment on these specific counts establish a subjective intent on the part of the Debtor to cause the Plaintiffs' injury as required to hold a debt nondischargeable under § 523(a)(6).[9]

■ Instead, the Plaintiffs argue that the facts in the Florida Complaint generally establish a claim for conversion under Florida law, which requires proof of: (1) an act of dominion wrongfully asserted, (2) over the plaintiff's property, that is (3) inconsistent with the plaintiff's ownership interests therein. *Compania de Elaborados de Café v. Cardinal Capital Management, Inc.*, 401 F.Supp.2d 1270, 1278 (S.D. Fla. 2003). While that may be true, no

9. The Plaintiffs' failure to cite with specificity where the facts in their summary originated is significant. For example, the Plaintiffs' summary states: "Debtor, along with Thomas Bolera, obtained monies belonging to Plaintiffs with the intent to permanently deprive Plaintiffs of such monies and with the intent to appropriate such monies to their own use." [Docket Number 36, p. 13, Summary, ¶ 1]. While this statement may seem to show a "subjective intent to cause injury," the fact was not part of the causes of action on which RPBM was awarded damages. After searching the Florida Complaint for this fact, this Court found an approximation of it in ¶ 175 which was part of Count VIII [Docket Number 35, Ex. B]. However, because the jury did not award any damages to RPBM based on Count VIII of the Florida Complaint, there is no "debt" owed to RPBM based on Count VIII or its supporting facts [Docket Number 35, Ex. H].

claim for conversion was included in the Florida Complaint and, consequently, the Debtor was not liable for conversion nor did the jury attribute damages based on conversion. Furthermore, as noted by the Supreme Court in *Kawaauhau*, "not every tort judgment for conversion is exempt from discharge." 523 U.S. at 63–64, 118 S.Ct. 974. Notably, the elements to prove conversion under Florida law cited by Plaintiffs and in the *Compania* case do not include a subjective intent to cause harm as required for nondischargeability pursuant to § 523(a)(6).

This Court concludes that the Plaintiffs have failed to establish that issue preclusion should be applied to except the judgment debt owed to RPBM from discharge under § 523(a)(6) or the other statutory nondischargeability provisions cited in the § 523 Complaint. Consequently, the court denies summary judgment to Plaintiff RPBM. As such, the remainder of this decision will focus on the elements of issue preclusion as they pertain to Dr. Papa's judgment and damages award.

## C. Critical and Necessary

■ Next, this Court considers whether the findings on which issue preclusion is to apply are a critical and necessary part of the state court judgment. *See St. Laurent*, 991 F.2d at 676. This becomes a concern when a multi-count complaint is involved. "If the judgment fails to distinguish as to which of two or more independently adequate grounds is relied on, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect." *Id.* Consequently, where prior litigation involves a complaint containing multiple counts that do not all allege fraud and where the judgment entered in the prior action does not specify the basis for the monetary award, it may not be possible to give the judgment preclusive effect in a § 523(a)(2) action. *See Dimmitt & Owens Financial, Inc. v. Green (In re Green)*, 262 B.R. 557, 570–71 (Bankr. M.D. Fla. 2001) (noting that the court cannot conclude that allegations regarding fraud are a "critical and necessary" part of a simple default judgment when both fraud and non-fraud counts were asserted in the state court complaint and there is no way to distinguish which count is the basis for the judgment).

■ In the case at hand, the prior judgment arose from the multi-count Florida Complaint and only some of the counts allege fraud [Docket Number 35, Ex. B]. However, unlike the circumstances discussed in *Green*, the Florida State Court held a jury trial to determine damages and the jury rendered a Jury Verdict specifying which counts constitute the basis for each of the Plaintiffs' damages awards. The jury specifically made Count IV (Fraudulent Inducement) a basis for the award of $760,551 in damages to Dr. Papa [Docket Number 35, Ex. H]. Consequently, the Debtor's fraud as described in Count IV of the Florida Complaint is a critical and necessary part of the state court judgment and jury award of $760,551 to Dr. Papa.

## D. Standard of Proof

■ The last prong for the application of issue preclusion requires that the standard of proof in the prior action be at least as stringent as the standard of proof in this dischargeability proceeding. *St. Laurent*, 991 F.2d at 677. The Debtor has not challenged this element and this Court easily concludes that it has been satisfied because the standards of proof for fraud under Florida law and for nondischargeability under § 523(a)(2)(A) are the same "preponderance of the evidence" standard. *Id.* With that, Dr. Papa has established the

necessary elements to apply issue preclusion to his judgment and damages award.

### E. Manifest Injustice

 While the elements for issue preclusion have been met with respect to Dr. Papa's judgment, this Court recognizes that under Florida law, the application of issue preclusion is permissive and should not be used where a "manifest injustice" would result. *Osorio v. Korge*, 2013 U.S. Dist. LEXIS 189172 at *19, 2013 WL 9958979, at *6 (S.D. Fla. Sept. 30, 2013); *Hartnett v. Mustelier (In re Hartnett)*, 330 B.R. 823, 831 (Bankr. S.D. Fla. 2005) (citing *State v. McBride*, 848 So.2d 287, 291 (Fla. 2003)). However, because issue preclusion remains "an important doctrine in the administration of justice," it should be applied, when the elements are met, in all but "rare and unusual" circumstances. *Hartnett*, 330 B.R. at 832.

 *Hartnett* is one example of unusual circumstances in which a bankruptcy court declined to apply Florida's doctrine of collateral estoppel in the context of a dischargeability proceeding. In *Hartnett*, a state court rendered a default judgment for child support against the debtor in a paternity case. 330 B.R. at 824–25. Following the default judgment entry, however, a DNA test established that the debtor was not the father. *Id.* at 825. In a subsequent bankruptcy dischargeability proceeding initiated by the debtor pursuant to § 523(a)(5), the defendants, including the Florida Department of Revenue, sought to apply issue preclusion to the default judgment and particularly to the conclusion that the debtor was the legal father. *Id.* at 828. The bankruptcy court declined to give the default judgment preclusive effect. *Id.* at 832. In arriving at its determination, the

court noted the importance of collateral estoppel, but determined that its application would result in a gross injustice to saddle this particular debtor with these debts since he was not actually the father of the child. *Id.* at 831–32.

Another example of unusual facts resulting in a court declining to apply issue preclusion is *Weisser v. Rubin (In re Rubin)*, 2000 Bankr. LEXIS 365, 2000 WL 387657 (Bankr. S.D. Fla. April 11, 2000). In *Rubin*, two pre-petition default judgments were rendered against a debtor in a Florida state court based on the failure of the debtor to actively participate or defend the cases. *Id.* at *1. It was later learned, however, that the debtor had hired an attorney to represent him and the attorney had assured his client that the complaints were responded to and would be appropriately defended. *Id.* In fact, the attorney failed to defend the suits and was ultimately disciplined by the Supreme Court of Florida and placed on an inactive list. *Id.* In declining to apply issue preclusion to the default judgments in the subsequent § 523(a) proceeding, the bankruptcy judge noted the unusual nature of the debtor's situation having been "virtually abandoned by his now disbarred attorney." *Id.* at *5. The court also relied on other equitable circumstances including the lack of trouble or expense on the part of the plaintiff-creditor who had not had to prove allegations in state court and the lack of any showing of dilatory or obstructionist tactics employed by the debtor in the prior litigation. *Id.*

Like the debtors in *Rubin* and *Hartnett*, the Debtor argues that it would be unfair to apply issue preclusion because her attorney was disqualified leaving her to handle the Florida Litigation on her own.[10]

---

10. The Debtor also argues that applying issue preclusion to the Fraud Order would result in

"substantial unfairness" because the Debtor was prevented from presenting the merits of

However, unlike the debtor in *Rubin*, who did not know that his lawyer had failed to answer the complaints until after the default judgments were rendered, the Debtor actively participated in all stages of the Florida Litigation both before and after her lawyer's disqualification, including the hearing resulting in the Fraud Order, the jury trial on damages and appeals of the Fraud Order and the Jury Verdict.

This Court also takes into consideration that unlike *Rubin*, the judgment in this case did not result from a simple failure to answer the complaint, but, instead from the Debtor implementing "a deliberate, pervasive scheme calculated to subvert the judicial process by filing a sham operative Complaint, providing false testimony under oath to the Court, and engaging in bad-faith delay tactics" as found by clear and convincing evidence in the Florida Litigation. [Docket Number 35, Ex. C, p. 10].

While the Debtor may not have had her day in court on the issue of liability in the manner this Court expected when granting relief from stay, it is not this Court's place to substitute its judgment for that of the Florida State Court in granting the Fraud Order. In view of the above, this Court concludes that it would not result in manifest injustice to apply issue preclusion to Dr. Papa's judgment and damages award against the Debtor.

## IV. CONCLUSION

WHEREFORE, Plaintiffs' *Motion for Summary Judgment* [Docket Number 35] is GRANTED, in part, and DENIED, in part, as follows:

> her case. However, as noted in this Court's analysis of the "actually litigated" prong, courts applying Florida's preclusive principles regularly give issue preclusive effect to default judgments particularly when a debtor has actively participated in the case or engaged in misconduct during the litigation.

1. The Debtor's judgment debt of $760,551 owed to Plaintiff John Papa is determined to be NON–DIS-CHARGEABLE pursuant to 11 U.S.C. § 523(a)(2)(A); and,

2. The Plaintiffs failed to demonstrate that issue preclusion should be applied to except the Debtor's judgment debt of $991,854 owed to Royal Palm Beach Medical, Inc. from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) or (a)(6). Consequently, summary judgment is DENIED as to Royal Palm Beach Medical, Inc. and the dischargeability of this judgment debt remains undetermined and must proceed to trial.

**IT IS SO ORDERED.**